EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. EDWIN MELÉNDEZ GRILLASCA, JUEZ, demandado; CRISTINO RIVAS MERCADO, interventor.

*Número:* O-67-179      *Resuelto:* 28 de junio de 1968

*J. B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados del peticionario; *Pascual F. Lanauze Ortiz* y *Luis Verges Lanausse,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El fiscal formuló acusación contra Cristino Rivas Mercado por el delito de falsificación, Art. 413 del Código Penal,

33 L.P.R.A. sec. 1641, imputándole que en el mes de diciembre de 1964 ". . . falsamente pasó, circuló y endosó el cheque número 146514 . . . pagadero a la orden de Luis Guillermo Burgos . . . cuyo cheque cambió el referido acusado . . . a sabiendas . . . que la firma de Luis Guillermo Burgos había sido falsificada por él mismo y que había sido falsamente endosado sin el consentimiento ni autorización de la Sra. María Negrón Vega Vda. de Sierra ni del Sr. Luis Guillermo Burgos, constándole la falsedad al acusado, con la intención . . . de defraudar, como defraudó, al Sr. Luis Guillermo Burgos y/o a la International General Electric de Ponce y/o al Gobierno del Estado Libre Asociado de Puerto Rico . . . ."

En el acto del juicio se ofreció y admitió como prueba, el cheque Núm. 146514 expedido en 12 de septiembre de 1964 por el Estado Libre Asociado de Puerto Rico a favor de Luis Guillermo Burgos (Exh. 1 del Pueblo). Al dorso de dicho cheque aparece un primer endoso con el nombre de Luis Guillermo Burgos y un segundo endoso con el de María Vega Negrón Vda. de Sierra, ambos en bolígrafo, así como una orden mediante un sello impreso para que se deposite a la cuenta de International General Electric Puerto Rico, Inc.

Mientras prestaba testimonio el agente especial Luis A. Segarra ocurrió el incidente que ha dado margen al presente recurso relacionado con la admisión de unos especímenes caligráficos tomados por dicho testigo al acusado. De la transcripción parcial que obra en los autos surge que en el curso de la investigación que se practicaba en San Juan se pidió al agente Segarra de Ponce que tomara una muestra de la letra de Cristino Rivas Mercado, quien estaba "entre las personas que podían ser el sospechoso". En el cumplimiento de la encomienda el agente visitó al acusado en su hogar y, sin hacerle advertencias de clase alguna, le requirió para que escribiera los nombres Luis Guillermo Burgos y María Vega Vda. de Sierra. Lo obtuvo. En efecto la iden-

tificación 2 del Pueblo consiste de tres hojas de papel rayado de libreta, que contienen los nombres Luis Guillermo Burgos, 16 veces en lápiz y 5 en bolígrafo, y María Vega Vda. de Sierra, 16 veces en bolígrafo. En la tercera hoja tiene una nota, en distinta letra, que lee: "11/8/65 Hr. 1:30 P.M. Estas muestras de escritura fueron tomadas al Sr. Cristino Rivas Mercado en su residencia en el Callejón Fagot 449 de la Cantera de Ponce en 8 de noviembre de 1965 por el A.E. Luis A. Segarra 1498 de la Detective de Ponce." A continuación, la firma del acusado.

Presentadas en evidencia las muestras caligráficas el juez recurrido se negó a admitirlas fundándose en que "la escritura es el equivalente a una admisión oral de culpabilidad" porque conduce a la producción de un testimonio pericial sobre el cotejo de la misma con las firmas falsificadas,[1] y elaborando sobre el fundamento añadió que "prácticamente es un testimonio que profirió el acusado porque da resultado a que se provea evidencia testimonial en su contra." A solicitud del Pueblo expedimos auto de *certiorari* para revisar esta resolución.

(1) La naturaleza del delito y de la evidencia objetada—especímenes de las firmas alegadamente falsificadas en un proceso de falsificación—nos conduce a la conclusión de que por tratarse en este caso específico de una etapa crítica de la investigación tenía que advertirse al sospechoso de su derecho a tener asistencia de abogado. Como se esboza en *United States* v. *Wade*, 388 U.S. 218 (1967), el criterio rector para determinar la necesidad de asistencia de abogado en las etapas anteriores al juicio es la posibilidad real de que pueda causarse un perjuicio sustancial al acusado. Para ello es necesario escudriñar las circunstancias que rodean la confrontación que ha tenido lugar y los frutos de la misma.

---

[1] Entre los testigos al dorso de la acusación figura el señor Rafael Viñas Negrón, a quien se identifica como examinador de documentos de la Policía Estatal.

Difícilmente puede concebirse una situación más preñada de riesgo para un acusado por el delito de falsificación que la que se presenta en este caso pues la actividad de los funcionarios a cargo de la investigación estuvo dirigida a extraer la prueba que por excelencia era necesaria para lograr una convicción. Basta comparar los especímenes obtenidos con las firmas al dorso del cheque ya presentado y admitido en evidencia para comprobar lo que afirmamos. En esas circunstancias era imprescindible advertir al sospechoso de su derecho a asistencia legal. Precisamente por tratarse de un delito de falsificación, cuyo elemento probatorio esencial es la identidad del escrito atribuido al acusado, podría afirmarse que prácticamente no existe diferencia con las admisiones orales incriminatorias a que aludimos al adoptar la norma de *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965).

El Procurador General descansa exclusivamente en expresiones de la opinión emitida en *Gilbert* v. *California*, 388 U.S. 263 (1967). (2) Pero la norma de precaria mayoría que

---

(2) Gilbert fue convicto de asalto a mano armada de un banco en Alhambra, California y del asesinato de un policía que trató de evitar el robo. Se le había arrestado en Filadelfia por agentes del Negociado Federal de Investigaciones y se había negado a contestar preguntas al interrogársele sobre el suceso de Alhambra. Luego, contestó preguntas sobre otros robos perpetrados en Filadelfia para cuya ejecución el asaltador había utilizado una nota manuscrita requiriendo la entrega de dinero. Durante la investigación, a instancias de los agentes que le interrogaban, dio unas muestras caligráficas. Se presentaron y admitieron en evidencia en el proceso por el asalto de Alhambra.

Después de rechazar la alegación de que la toma de las muestras viola el derecho a no incriminarse, se dice en la opinión de la mayoría:

"La toma de los ejemplares no fue una etapa 'crítica' en el proceso acusatorio que requiriera la asistencia de abogado. Dejando a un lado el hecho de que fueron tomados antes de la acusación y de la designación de abogado, hay un riesgo mínimo de que la ausencia de abogado haya menoscabado el derecho a un juicio justo. [Cita.] Sí, por cualquier motivo, no se toma un espécimen representativo, esto puede traerse y corregirse en el juicio a través del proceso adversativo ya que el acusado puede escribir un número ilimitado de muestras para ser analizadas y comparadas por los peritos del gobierno y de la defensa. Así, el acusado tiene la

en dicho caso se establece no es para ser aplicada en forma inflexible, desconociendo los hechos y circunstancias particulares que median en las distintas situaciones. Así, en nuestro caso, se trata de la prueba por excelencia para establecer el delito imputado de falsificación; en *Gilbert* se trataba de prueba obtenida en relación con la investigación para la prosecución de otros delitos distintos a aquél en que se utilizaron las muestras.

En *United States* v. *Wade*, 388 U.S. 218 (1967), se sostuvo la necesidad de la presencia de abogado para asistir a un sospechoso a quien, para fines de identificación, se le requiere que participe en una formación o rueda de detenidos (*line up*), porque tal confrontación "está particularmente llena de innumerables peligros y factores variables que pueden seriamente, hasta en forma crucial, menoscabar un juicio justo." En verdad que, al igual que lo afirma el Juez Asociado Señor Fortas en su disenso en *Gilbert*, no encontramos base racional para establecer una distinción entre esta situación y la toma de una muestra caligráfica para ser utilizada en un proceso por falsificación. Ciertamente ningún contrainterrogatorio puede subsanar los perjuicios que causa la entrega de un espécimen caligráfico incriminatorio.

Precisa aclarar que el fiscal de distrito expresamente admitió que "entre las personas que podían ser el sospechoso estaba Cristino Rivas" (T.E., pág. 1), y por tanto, la investigación tenía el cariz de acusatoria. La limitación que se pretende hacer en la opinión disidente por el hecho de que Rivas no fuera el *único* sospechoso carece de importancia. El lenguaje de *Rivera Escuté* v. *Jefe Penitenciaría*, supra, que al efecto se invoca no tiene el alcance restrictivo que se le

---

oportunidad en el juicio de confrontarse en forma adecuada con la prueba de cargo a través del procedimiento usual del contrainterrogatorio de los peritos calígrafos del Estado y la presentación de sus propios calígrafos. [Cita.]"

atribuye y debe considerarse a la luz de los hechos que rodeaban ese caso.

(2) Finalmente precisamos que justificamos el rechazo de la evidencia ofrecida no por el fundamento de que se viola el derecho contra la autoincriminación, sino por la falta de asistencia de abogado en una etapa crítica anterior de un proceso por falsificación.

Compartimos la preocupación de la opinión disidente en cuanto a la protección que merece la comunidad frente a la creciente incidencia de delitos. Pero no acertamos a percibir la visión apocalíptica que se esboza como resultado de nuestra decisión de efecto tan limitado a un simple caso de falsificación. Ciertamente estos problemas de derechos de los acusados merecen ser apreciados en el plano judicial con serenidad y mesura, desprovistos de todo sentido de histeria y pánico.

*Se anulará el auto expedido.*

El Juez Asociado Señor Blanco Lugo emitió un voto separado. El Juez Asociado Señor Santana Becerra concurrió en el resultado en opinión separada. El Juez Asociado Señor Ramírez Bages disintió mediante opinión en la cual concurre el Juez Asociado Señor Torres Rigual. El Juez Asociado Señor Rigau no intervino.

—o—

Voto separado del Juez Asociado Señor Blanco Lugo

San Juan, Puerto Rico, a 28 de junio de 1968

Una vez adoptada la doctrina de exclusión de las confesiones obtenidas de un acusado o sospechoso que se encuentra bajo la custodia de la policía u otra autoridad competente mientras se le interroga para lograr manifestaciones incriminatorias por la omisión de advertirle de sus derechos a no incriminarse y a tener asistencia de abogado en dicho acto, *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), no vemos cómo pueda negarse igual protección cuando

se trata no ya de la confesión o de admisiones, sino de otra evidencia no testimonial suministrada por el acusado pero que en cuanto a sus efectos es igualmente perjudicial e incriminatoria. Cualquier distinción que pretenda establecerse es puramente artificial y sofística; está reñida con la razón y la lógica porque los mismos fundamentos para la exclusión están presentes en ambas situaciones.

No ignoro que la posición contraria encuentra soporte, como proposición general, en expresiones del Tribunal Supremo federal en *Schmerber* v. *California*, 384 U.S. 757 (1966) y *Gilbert* v. *California*, 388 U.S. 263 (1967). Sin embargo, estimo que ante la cardinal obligación de darle contenido a garantías similares consagradas por la Constitución del Estado Libre Asociado de Puerto Rico—derecho a no incriminarse, a tener asistencia de abogado y a ser enjuiciado dentro de normas de debido procedimiento de ley— tal interpretación no merece nuestra confirmación.

Por el fundamento adicional de que era procedente advertir al detenido antes de tomarle las muestras caligráficas de su derecho a no incriminarse, sostendría la exclusión de la evidencia presentada.

—O—

Voto del Juez Asociado Señor Santana Becerra concurriendo en el resultado

San Juan, Puerto Rico, 28 de junio, 1968

Concurro en el resultado. Con lo que tenemos en el récord no estoy en condiciones de aseverar que la situación en este caso en lo que respecta a la asistencia de abogado encuadra de lleno en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965) y en *Escobedo* v. *Illinois*, 378 U.S. 478 (1964).

En las circunstancias precisas de este proceso, en que el delito imputado es la falsificación de la firma de otra persona, obligar a firmar el nombre de esa persona equi-

valió a extraerle al acusado una declaración. El hacerle escribir varias veces ese nombre fue un testimonio, y no una mera muestra de escritura. Compárese: *Gilbert* v. *California*, 388 U.S. 253, 265 (1967); *Schmerber* v. *California*, 384 U.S. 757, 763 (1966); *United States* v. *Wade*, 388 U.S. 218, 221 (1967).

No sostengo que la toma de una muestra de escritura, con o sin advertencias, o sin asistencia legal viole la garantía constitucional contra el testimonio autoincriminatorio. Pero en las circunstancias de este caso, se obligó al acusado a *testimoniar* en su contra porque lo que se le hizo escribir constituye la comisión misma del delito imputado.

Tuviera o no asistencia legal en ese momento, al acusado debió advertírsele su derecho a no incriminarse, y que lo que escribiera podría ser usado en su contra como cualquier otro testimonio. Sin tales advertencias se violó la garantía constitucional que ofrece el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.(1)

Concurro en que la evidencia fue propiamente excluida por la Sala de instancia.

—O—

Opinión disidente del Juez Asociado Señor Ramírez Bages en la cual concurre el Juez Asociado Señor Torres Rigual

San Juan, Puerto Rico, a 28 de junio de 1968

Disiento porque concluyo que las muestras caligráficas no se obtuvieron en este caso en un estado crítico de los procedimientos y por lo tanto no había que advertir al interventor de su derecho a asistencia de abogado y de su derecho a no incriminarse.

En este caso el interventor no estaba bajo custodia cuando se obtuvieron de él las referidas muestras pues se obtuvieron

---

(1) "Nadie será obligado a incriminarse mediante su propio testimonio. . . ."

en su propio hogar. Tampoco puede concluirse que en ese momento "la investigación tenía el cariz de acusatoria y se posa sobre un sospechoso en particular", como dijimos en *Rivera Escuté* v. *Jefe Penitenciaría,* 92 D.P.R. 765, 778, 779 (1965), pues al pedirse a un agente de la policía que tomara una muestra de la letra del interventor éste estaba "entre las personas que podían ser el sospechoso" de manera que la investigación aún no había progresado al extremo de recaer la sospecha sobre el interventor en particular.

*United States* v. *Wade,* 388 U.S. 218 (1967), es claramente distinguible. En dicho caso se revocó la sentencia debido a que se admitió en juicio la identificación del acusado como el autor de un delito porque el testigo lo identificó como tal autor al mostrársele antes del juicio en una rueda de sospechosos llevada a cabo en la sala de un tribunal. Eso se realizó con posterioridad a la radicación de la acusación, para fines de identificación, sin previo aviso a, y en ausencia del, abogado del acusado. En este caso, el tribunal específicamente concluyó que la participación del acusado Wade en la rueda de sospechosos no envolvía una violación de su privilegio en contra de la autoincriminación. El dictamen en *Wade,* supra, se basó en los numerosos riesgos y factores variantes existentes en la práctica de identificación en rueda de sospechosos, los que pueden afectar seria y hasta crucialmente la celebración de un juicio justo. Obviamente tales riesgos y factores no existen en la obtención de muestras caligráficas pues, como dijo el Tribunal Supremo de los Estados Unidos en *Gilbert* v. *California,* 388 U.S. 263 (1967), citando a *Wade,* supra, "La toma de muestras no es una etapa crítica del procedimiento judicial que le dé derecho al peticionario a ser asistido de abogado . . . el riesgo es mínimo de que la ausencia de abogado afecte su derecho a un juicio justo." Dijo el tribunal que si la muestra no es representativa esto se puede levantar y corregir a través del procedimiento adversativo del juicio ya que el acusado puede

escribir otras muestras para análisis por los peritos, y como se dijo en *Wade*, supra, "el acusado tiene la oportunidad de controvertir significativamente el caso del Estado en el juicio a través del proceso ordinario del contrainterrogatorio de los peritos del Estado y la presentación de la evidencia de sus propios peritos en caligrafía."

Nos preocupa grandemente la decisión de la mayoría en este caso pues no tan sólo carece del fundamento debido sino que al hacer caso omiso de la directriz establecida en *Wade*, supra, y *Gilbert*, supra, y por el contrario, al establecer normas más allá de los límites hasta ahora aceptadas con respecto al derecho de asistencia de abogado, en ese extremo altera el razonable balance que debe existir entre los derechos individuales y los de la comunidad, entre los derechos de los que realizan toda clase de delitos y de los que se comportan dentro de las normas de ley prevalecientes. La sociedad debe protegerse adecuadamente contra toda actuación ilegal que por su naturaleza y malsano ritmo de crecimiento tienda a socavar sus más hondos cimientos. Juez Warren E. Burger, *Crime and Criminal Law Today*, 28 Rev. C. Abo. P.R., 157 (Nov. 1967). Esto resulta aún más evidente en un país como Puerto Rico aún en desarrollo, de limitados recursos que no le han permitido desarrollar, en la amplitud y extensión necesaria, sus necesidades de educación, orientación social y de seguridad policiaca. Si en un país de recursos casi ilimitados como lo es Estados Unidos, su más alto tribunal ha creído juicioso fijar el límite al derecho individual establecido en *Gilbert*, supra, mal podemos nosotros gastarnos el lujo de ignorarlo y desoír el alto implícito en la opinión de mayoría en ese caso. Nuestras condiciones sociales y ambientales exigen que actuemos con gran cautela en estas situaciones y que consideremos, con mayor razón, no tan sólo los derechos constitucionales del individuo sino también los de una sociedad en que el individuo ha de actuar y desenvolverse

dentro de un ordenamiento jurídico adoptado y prescrito por esa sociedad para la mejor convivencia dentro de ella, para la mayor protección de los individuos que la componen, y para la misma supervivencia de dicha sociedad.