EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. EDWIN MELÉNDEZ GRILLASCA, JUEZ, demandado.

*Número:* O-69-4      *Resuelto:* 9 de abril de 1969

200

*J. F. Rodríguez Rivera, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados del peticionario; el demandado no compareció.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

"Cuando el individuo está sometido a interrogatorio por la policía mientras se encuentra bajo custodia en el cuartel o privado de su libertad de acción en una forma significativa" es la frase talismánica que determina la aplicación, en cuanto a la categoría de lugar, de la doctrina elaborada en *Escobedo* v. *Illinois,* 378 U.S. 478 (1964) y *Miranda* v. *Arizona,* 384 U.S. 436 (1966), que fuera adoptada por este Tribunal en *Rivera Escuté* v. *Jefe Penitenciaría,* 92 D.P.R. 765 (1965). En las dos expresiones posteriores del Tribunal Supremo federal sobre el particular se define el concepto de custodia policíaca para incluir no sólo la detención en el cuartel, sino también cualquier otra detención, aunque no sea por la comisión del delito de que se le sospecha y por el cual posteriormente se procesa, *Mathis* v. *United States,* 391 U.S. 1 (1968), y aun en el propio hogar del acusado, al interrogársele mientras éste se encuentra incomunicado, *Orozco*

v. *Texas*, 394 U.S. 324, 37 U.S. L. Week 4260 (U.S. Marzo 25, 1969). En la misma trayectoria, ya en *Pueblo* v. *Tribunal Superior*, 96 D.P.R. 397 (1968), habíamos aplicado la norma de *Rivera Escuté*, supra, a un sospechoso a quien se le tomaron unas muestras caligráficas en su hogar que luego se utilizaron como prueba en un proceso por falsificación.

■ Las situaciones envueltas en estos casos no envolvían gran dificultad en sus hechos para la determinación de si en efecto el acusado se encontraba bajo custodia en el momento de hacer las manifestaciones o el acto incriminatorio. Parece claro que una vez se ha colocado al sospechoso bajo arresto, aunque no se encuentre en el cuartel, *pero estando efectivamente restringido en su libertad,* es necesario hacer las advertencias requeridas para garantizar los derechos contra la autoincriminación y de asistencia de abogado. *Orozco* v. *Texas*, supra; *Mathis* v. *United States*, supra. [1]

■ Para resolver el presente caso, [2] sólo nos resta considerar si la regla de exclusión es extensiva a manifestaciones

---

[1] Las opiniones disidentes tanto en el caso de *Mathis* como en el de *Orozco* aluden a que la doctrina de *Miranda* se adoptó para evitar "la influencia corrosiva de prácticas propiciadas por el interrogatorio en las estaciones de policía", como la detención prolongada, mientras el sospechoso se encuentra incomunicado, en ausencia de observadores imparciales, y en un ambiente de temor que pueden producir una coerción física o psicológica. La mayoría en *Orozco* rechaza esta interpretación limitada y delínea el alcance de *Miranda* como "La opinión itera y reitera la necesidad absoluta de que se hagan las advertencias por los agentes que interrogan a personas que se encuentran 'en custodia'."

[2] El delegado del Procurador General resume los hechos así:

"En la noche del 10 de noviembre de 1967, el señor Pedro H. Morales Vargas, mientras conducía un vehículo de motor por la carretera que conduce de Yauco a Guayanilla, arrolló a una persona que caminaba por la orilla de dicha carretera. Morales Vargas detuvo su automóvil y le dijo al joven Bendramil Oliveras—quien iba caminando por la carretera—que él era el dueño del auto y que estaba en disposición de pagar 'los gastos que fueran'. Momentos después llegó al lugar del accidente un policía Ramón Ortiz Rodríguez, quien patrullaba ese sector. El policía fue informado sobre la ocurrencia del accidente por los jóvenes Bendramil Oliveras y Johnny Lugo. Al ser preguntados por el policía, estos dos jóvenes señalaron al señor Morales Vargas como la persona que conducía el vehículo. El policía

hechas por el acusado al ser interrogado en las investigaciones rutinarias de infracciones de tránsito que lleva a cabo la

Ortiz Rodríguez entonces, le preguntó al señor Morales Vargas si realmente él iba conduciendo el vehículo y éste le manifestó que sí y que él era el dueño del auto. Al hablar con Morales Vargas el policía Ortiz notó que aquél expedía un fuerte olor a licor y que no se mantenía firme en sus pies, pareciendo que se iba a caer hacia atrás a hacia adelante. Además, al serle pedida la licencia de conducir 'se paró para buscarla en la cartera teniéndola en las mismas manos decía que no la tenía'. Al notar esto, el policía Ortiz arrestó a Morales Vargas haciéndole las advertencias legales en cuanto a la toma de la muestra de sangre u orina. El detenido manifestó que quería someterse al análisis de la sangre y fue conducido a un hospital. Allí se negó a dejarse sacar la sangre a menos que estuviera con él un abogado. Fue conducido al cuartel de la policía de Guayanilla, donde se preparó la denuncia contra él. De allí fue trasladado por la policía ante el juez de Peñuelas. En ese pueblo el arrestado consiguió los servicios de un abogado, quien le aconsejó que se dejara sacar la muestra de sangre o de orina. El juez de Peñuelas ordenó entonces que lo condujeran al Centro de Salud de ese pueblo para que se le tomara la muestra. Allí le fue extraída la muestra de sangre, a las dos horas y cuarenticinco minutos después de haber sido arrestado.

"Por los hechos anteriormente relatados, Morales Vargas fue acusado ante el Tribunal Superior, Sala de Ponce, por una infracción a la sección 5-801 de la Ley de Vehículos y Tránsito de Puerto Rico, consistiendo dicha infracción en que el referido acusado conducía el 10 de noviembre de 1967 un vehículo de motor estando bajo los efectos de bebidas embriagantes. Se alegó, además, en la acusación, que con motivo de la anterior infracción, el acusado ocasionó graves lesiones corporales al Sr. Francisco Rodríguez Santiago.

"El día 15 de marzo de 1968 se celebró la vista del caso contra el acusado ante el Hon. Juez Edwin Meléndez Grillasca. Una vez escuchada y aquilatada la prueba de cargo y de defensa, el juez declaró al acusado culpable y convicto del delito de conducir en estado de embriaguez un vehículo de motor. El convicto fue sentenciado a pagar trescientos dólares de multa y su licencia para conducir fue suspendida por el término de un año. A petición del acusado, el tribunal dejó sin efecto la sentencia y pospuso su pronunciamiento.

"Posteriormente, el acusado solicitó la reconsideración del fallo emitido, alegando que el tribunal erró al permitir que el policía que investigó los hechos declarara sobre la admisión que le hizo el acusado en el sentido de que él conducía el automóvil, sin que antes le advirtiera sobre su derecho a no declarar y a tener ayuda de abogado, conforme lo resuelto en los casos de *Escobedo* v. *Illinois*, 378 U.S. 478; *Miranda* v. *Arizona*, 384 U.S. 436; y *Rivera Escuté* v. *Jefe Penitenciaria*, 92 D.P.R. 765 (1965). Mediante resolución dictada en 24 de mayo de 1968, el tribunal dejó sin efecto el fallo condenatorio y ordenó un nuevo juicio en el caso por entender que la admisión del acusado al policía en el sentido de que él conducía el vehículo,

policía en el lugar de los hechos. (³) Es preciso apuntar previamente que varias disposiciones de la Ley de Vehículos y Tránsito requieren la identificación del conductor de un vehículo bajo determinadas circunstancias: la Sec. 4-101, 9 L.P.R.A. sec. 781, exige a todo conductor envuelto en un accidente que se detenga en el sitio y allí permanezca hasta *"dar su nombre,* dirección, número de su licencia o identificación de su vehículo a la persona perjudicada, o a cualquier acompañante, *o agente del orden público"*; (⁴) (Énfasis nuestro.) la Sec. 4-103, 9 L.P.R.A. sec. 783, requiere que en el caso de un accidente no investigado por la policía en el lugar de su ocurrencia que haya resultado en daño a otra persona o a propiedad ajena, el conductor deberá informar el accidente al cuartel de la policía más cercano; la Sec. 4-104, 9 L.P.R.A. sec. 784, dispone que el conductor de un vehículo envuelto en un accidente que resultare en daño a cualquier propiedad cuyo dueño no estuviere presente en el sitio, tratará de localizar a éste, identificarse y mostrarle su licencia de conductor. En términos generales, la Sec. 5-1121(a), 9 L.P.R.A. sec. 1151(a), dispone que todo conductor deberá detenerse inmediatamente cuando un agente del orden público

le resultó incriminatoria y que el policía debió, antes de requerirle sobre ese particular, hacerle las advertencias que requieren los casos de *Escobedo* y *Miranda."*

(³) En *Pueblo* v. *Beltrán Santiago,* 97 D.P.R. 92 (1969), sostuvimos la admisión en evidencia de la manifestación del acusado al efecto de que conducía un vehículo de motor, porque éste no se encontraba bajo arresto o bajo custodia policíaca, cuando "ni siquiera se interrogaba al acusado sobre el delito de conducir un vehículo bajo efectos de bebidas embriagantes". Véase, *Pueblo* v. *Sánchez,* CR. 68-156, Sentencia de 7 de abril de 1969.

(⁴) En *Pueblo* v. *Padilla,* 36 D.P.R. 790 (1927), se sostuvo la validez de una disposición similar—Art. 12(b) de la Ley Núm. 75 de 13 de abril de 1916 (Leyes, pág. 144)—frente a una alegación de infracción al precepto constitucional sobre la autoincriminación. Se adoptó el razonamiento de cortes estatales en el sentido de que se trataba de una simple reglamentación policíaca y se aludió a la facultad legislativa para imponer condiciones al "privilegio" de usar las carreteras públicas.

se lo requiera y "vendrá obligado igualmente a identificarse con dicho agente si así éste se lo solicitare. . . ."

Todas las consideraciones, incluyendo las prácticas, nos llevan a la inevitable conclusión de que el interrogatorio a que se somete inicialmente a un infractor de las leyes de tránsito, cuando el agente sólo se orienta para descubrir la identidad de éste, no está cobijado por la doctrina de *Miranda*. No se trata propiamente, conforme al razonamiento mayoritario, de custodia que prive de la libertad en una forma significativa, ni concurren, por otro lado, las circunstancias de la detención en el cuartel que, conforme a la minoría, dieran vida a la regla de exclusión. Cualquier otra solución entorpecería gravemente el trámite de investigación sencilla que se requiere en estos casos. También es innegable que la identificación del infractor, aunque necesaria para el encausamiento, no establece ningún elemento integrante del delito en sí. En *Miranda*, a las págs. 477–478 se dice:

"Nuestra decisión no tiene el propósito de entorpecer la tradicional función de los agentes de la policía de investigar la comisión de delitos. [Cita.] . . . Un interrogatorio general en el escenario sobre los hechos que rodean un crimen u otro interrogatorio general de los ciudadanos en el trámite de determinación de los hechos no se afecta por nuestra resolución. . . . En estas situaciones el clima de presión que es inherente al interrogatorio bajo custodia no está presente necesariamente."

Prácticamente todas las interpretaciones de los tribunales federales y estatales coinciden con este criterio.(⁵) Véanse,

---

(⁵) *Clark* v. *United States*, 400 F.2d 83 (9th Cir. 1968) ; *United States* v. *Bagdasian*, 398 F.2d 971 (4th Cir. 1968) ; *United States* v. *Thomas*, 396 F.2d 310 (2d Cir. 1968) ; *Allen* v. *United States*, 390 F.2d 476 (D.C. Cir. 1968) ; *Williams* v. *United States*, 381 F.2d 20 (9th Cir. 1967) ; *Evans* v. *United States*, 377 F.2d 535 (5th Cir. 1967) ; *United States* v. *Kuntz*, 265 F.Supp. 543 (1967) ; *State* v. *Gillespie*, 241 A.2d 239 (N.J. 1968) ; *State* v. *Gosser*, 236 A.2d 377 (1967) ; *Dixon* v. *State*, 232 A.2d 538 (Md. 1967) ; *Gaudio* v. *State*, 230 A.2d 700 (Md. 1967) ; *Duffy* v. *State*, 221 A.2d 653 (Md. 1966) ; *People* v. *Phinney*, 239 N.E.2d 515 (N.Y. 1968) ; *People* v. *Gilbert*, 154 N.W.2d 800 (Mich. 1967) ; *Schnepp* v. *State*, 437 P.2d 84 (Nev. 1968) ; *Lung* v. *State*, 420 P.2d 158 (Okla. 1966) ; *Paulk* v. *State*,

Anotación, *Necessity of informing suspect of rights under privilege against seif-incrimination, prior to police interrogatio̧n,* 10 A.L.R.3d 1054 (1966); Graham, *What is "Custodial Interrogation?":  California's Anticipatory Application of Miranda v. Arizona,* 14 U.C.L.A. L. Rev. 59 (1966). Notas, 16 Buffalo L. Rev. 439 (1967), 18 W. Res. L. Rev. 1777 (1967), 45 N.C.L. Rev. 206 (1966), Utah L. Rev. 687 (1966).

*No siendo necesarias las advertencias en las circunstancias del presente caso, se dejará sin efecto la resolución del Tribunal Superior, Sala de Ponce, de fecha 24 de mayo de 1968, y se devolverá para ulteriores procedimientos.*

211 So.2d 591 (Fla. 1968); *State v. Oxentine,* 154 S.E.2d 529 (N.C. 1967); *Tate v. State,* 413 S.W.2d 366 (Tenn. 1967); *People v. Ward,* 72 Cal. Rptr. 46 (1968); *People v. Gant,* 70 Cal. Rptr. 801 (1968); *People v. Chavez,* 68 Cal. Rptr. 759 (1968); *People v. Wright,* 66 Cal. Rptr. 95 (1968); *People v. Butterfield,* 65 Cal. Rptr. 765 (1968); *People v. Hazel,* 60 Cal. Rptr. 437 (1967); *People v. Beasley,* 58 Cal. Rptr. 485 (1967); *People v. Alexander,* 293 N.Y.S.2d 138 (1968); *People v. Schwartz,* 292 N.Y.S.2d 518 (1968); *People v. P.,* 286 N.Y.S.2d 225 (1967).