# 95 DTA 178

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

EL PUEBLO DE PUERTO RICO
Recurrido

v.

L.A. GERMAN BAUZO PINTO
Acusado-Recurrente

Núm. KLCE-95-00142

San Juan, Puerto Rico, a 19 de junio de 1995

Panel integrado por su presidente, Juez Rossy García
y los Jueces Aponte Jiménez y Negroni Cintrón

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revisión de una resolución emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 22 de febrero de 1995. Mediante ésta se declaró *"no ha lugar"* una moción solicitando supresión de evidencia,

fundamentada en que se habían violentado los derechos constitucionales del peticionario. Luego de un análisis ponderado del recurso instado a la luz de los documentos que obran en autos, el derecho aplicable y la jurisprudencia interpretativa, resolvemos que el foro de instancia incidió al así dictaminar y que resulta procedente expedir el auto solicitado para revocar la resolución recurrida.

Para colocar la cuestión de derecho que nos compete resolver en correcta perspectiva, veamos los hechos pertinentes que culminaron con.la radicación de la acusación contra el aquí peticionario.

# I

Se desprende de los autos y, en particular, de la declaración jurada prestada por el policía Félix Deida Martínez,■ que el 27 de septiembre de 1994 el peticionario conducía su automóvil por la Avenida Martínez Nadal, jurisdicción.de San Juan. A la misma hora patrullaban por la referida avenida los policías Félix Deida Martínez y Reinaldo Hernández, quienes tras observar al peticionario rebasar a una guagua por el área del paseo, procedieron a detenerlo. Ambos agentes se allegaron hasta el automóvil del peticionario y le solicitaron su licencia de conducir. Por no tenerla en ese momento con él por alegadamente haberle sido retenida luego de la expedición de un boleto por infracción a la Ley de Tránsito y tampoco contar con la registración del vehículo, el policía Félix Deida procedió a requerirle alguna identificación con foto, mostrándole entonces el peticionario una tarjeta de identificación de un club de tiro.

Habiendo acreditado este último su identidad según indicado, el agente procedió entonces a preguntarle si poseía algún arma de fuego. El peticionario contestó en la afirmativa. Acto seguido, Deida Martínez le solicitó los documentos de dicha arma, procediendo entonces el peticionario a mostrarle dos licencias. La primera de tiro al blanco con el número 20084660. La segunda de tener y poseer un arma de fuego con el número 224-552.

Con este trasfondo, ya plenamente identificado el peticionario y sin habérsele hecho advertencia legal alguna, el policía Deida continuó con el siguiente curso de preguntas, según surge de la declaración jurada por él prestada:

*"Inmediatamente procedí a preguntarle si éste poseía algún arma de fuego, [...]. [E]ste me indicó que sí. Inmediatamente le pedí los documentos de dicha arma, el cual [sic] si tenía de tiro al blanco y de tener y poseer, [...y] me mostró dos licencias, una de ellas de tiro al blanco con el número 20084660 y la otra licencia de tener y poseer un arma de fuego, con número 224-552.*

*Rápidamente le pregunté donde [sic] se encontraba dicha arma de fuego [...]. [E]ste me indicó de que [sic] la tenía al lado del asiento [...y] le indiqué que si me la podía mostrar y éste me dijo que sí, que la cogiera, que se encontraba dentro de una cartera. Al revisar dicha cartera se encontraba una pistola 9mm, modelo 5906, marca Smith & Wesson con el número de serie VAA6777. Dicha arma se encontraba cargada con quince balas y dentro de la cartera se encontraba adicional [sic] un peine conteniendo nueve balas.*

*Este me indicó de que [sic] él venía de visitar a un cliente en Colinas de Guaynabo y de que [sic] éste se dirigía hacia su casa en Canóvanas. Ahí inmediatamente procedí a arrestarlo y a leerle sus advertencias, ya que dicha arma no tenía licencia para portarla. Una vez llevado al Cuartel, cuando se estaba confeccionando el inventario del vehículo, en la gaveta de éste se ocupó una caja de balas 9mm conteniendo 24 balas. Dicho caso fue consultado con la fiscal Carmen L. Rivera quien autorizó a que se sometiera el caso."*

A raíz de estos hechos, se le imputó al peticionario una infracción al Artículo 8 de la Ley

de Armas de Puerto Rico. 25 L.P.R.A. sec. 418.■ Luego de la celebración de la vista preliminar en la que se determinó existencia de causa probable y presentada la acusación correspondiente, el peticionario procedió a presentar moción solicitando la supresión de las admisiones y la evidencia ocupada por alegadamente haber sido obtenidas en violación a sus derechos constitucionales■

Considerada como fue la moción presentada, la misma fue señalada para vista para el 16 de febrero de 1995, en cuya ocasión se aportó como única prueba el testimonio del policía Félix Deida Martínez. El mismo, según indicado por el Procurador General en su escrito sobre mostración de causa, *"fue igual al vertido en la declaración jurada que le fuera tomada el 27 de septiembre de 1994"* y que obra en autos.■ Sometida como quedó la moción a base de la prueba antes indicada, la misma fue declarada sin lugar.■

Inconforme con dicho dictamen, el peticionario presentó el recurso que nos ocupa en el que imputa la comisión de los siguientes errores:

*"a. Erró el Honorable Tribunal al no determinar que la prueba presentada contra el acusado fue una producto de un registro ilegal e irrazonable.*

*b. Erró el Honorable Tribunal al no determinar que el acusado se le violó su derecho a la no autoincriminación.*

*c. Erró el Honorable Tribunal al no suprimir la prueba presentada por el Ministerio Público."*

En atención al recurso instado, el 7 de abril de 1995 emitimos Resolución al Procurador General un término de quince (15) días para exponer su posición en relación con el mismo. El Procurador ha comparecido mediante escrito en el que aduce fundamentos para validar el dictamen recurrido que no nos persuaden.

Encontrándonos en condición de dictaminar resolvemos, por los fundamentos que pasamos a consignar, que resulta procedente expedir el auto solicitado para revocar el dictamen recurrido.

## II

Debemos iniciar por señalar que el derecho contra la autoincriminación es la protección más abarcadora que tienen los ciudadanos frente al interrogatorio de los funcionarios del gobierno. ■ Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Vol. I, Ed. Forum, Bogotá (1991), sec. 2.3, pág. 69. Se trata de un derecho que tiene a su disposición cualquier ciudadano que al ser sometido a interrogatorio por autoridad gubernamental en cualquier tipo de procedimiento investigativo, bien sea civil, criminal, administrativo o legislativo, se expone a peligro real de responsabilidad criminal. *Id.,* secs. 3.2 y 3.3, págs. 119-120.

Ahora bien, debemos aquí señalar que para que se active la protección reconocida en *Miranda v. Arizona,* 384 U.S. 436 (1965), en protección del derecho constitucional contra la autoincriminación, es requisito previo establecer que ha habido un interrogatorio de un sospechoso bajo custodia. Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos, supra,* sec. 2.3, pág. 82. De este modo, cuando una investigación gubernamental toma el cariz de acusatoria y se centra en un sospechoso en particular con miras a sustraerle una confesión o cualquier tipo de declaración que tienda a incriminarle, surge la obligación del organismo competente de advertirle al sospechoso de su derecho constitucional a permanecer en silencio, informándole que todo cuanto diga puede ser usado en su contra; del derecho que le asiste a consultar con un abogado y a tenerlo con él durante

el interrogatorio, con indicación a los efectos de que si es indigente, se le nombrará abogado de oficio. *Miranda v. Arizona, supra.* Hechas tales advertencias y de invocarse el privilegio, cualquier interrogatorio en proceso debe cesar. *Id.* Como sanción para el caso de incumplimiento, declaraciones obtenidas de violación a las anteriores normas son inadmisibles contra el acusado. *Id.* a las págs. 476-477, lo que es cónsono con el propósito histórico de la Regla de Exclusión, a saber, disuadir la conducta policíaca dirigida a explotar la naturaleza coercitiva resultante de su intervención con los ciudadanos. *Arizona v. Evans,* ___ U.S. ___ (1995), 63 U.S.L.W. 4179 (1995).

Recapitulando, para que un acusado pueda invocar con éxito la protección constitucional para impedir que el Estado presente en evidencia durante el proceso una admisión o confesión que él hizo durante la etapa investigativa por razón de habérsele violado su derecho contra la autoincriminación o su derecho a asistencia de abogado, tienen que estar presentes cuatro requisitos, a saber: (1) al momento de obtenerse la declaración impugnada --admisión o confesión-- la persona que prestó la misma, era ya sospechosa de la comisión de un delito; (2) el acusado al hacer la declaración se encontraba bajo custodia del Estado; (3) la declaración fue producto de un interrogatorio (o su equivalente funcional) por parte de los agentes del Estado; y que (4) antes de que se comenzara el interrogatorio o que se hiciera la admisión objetada, los agentes no le hicieron advertencia alguna al sospechoso sobre los derechos que le asisten por lo que no medió renuncia alguna a dicho derecho de parte de éste. *Pueblo v. López Guzmán,* ___ D.P.R.___ (1992); **92 J.T.S. 142,** a la pág. 10058. Si falta alguno de estos requisitos la jurisprudencia antes reseñada no exige las advertencias. Véase sobre el particular, *California v. Beheler,* 463 U.S. 1121 (1983); *Oregon v. Bradshaw,* 462 U.S. 1039 (1983); *Pueblo v. Chaar Cacho,* 109 D.P.R. 316 (1980); Richard W. Williamson, *The Virtues (and Limits) of Shared Values: The Fourth Amendment and Miranda's Concept of Custody,* 21 Search & Seizure Law Report, No. 3 (1994), pág. 17.

A la luz de la doctrina antes reseñada resulta procedente evaluar la situación particular del caso que nos ocupa para dilucidar si se cumplieron los requisitos que harían acreedor al peticionario de las advertencias de ley antes del momento en que hizo las admisiones incriminatorias que condujeron a la ocupación del arma cuya supresión se solicita.

## III
Dirigiendo nuestra atención inicialmente al primer requisito de los antes indicados, ninguna duda debe existir en cuanto a que en el momento en que el policía Deida Martínez lo interrogó en relación con el arma, ya plenamente identificado el peticionario, su investigación había girado por completo para dirigirse a obtener evidencia incriminatoria relacionada con un delito ajeno a la infracción a la Ley de Tránsito. Obviamente y por la naturaleza de las preguntas, la investigación había tomado cariz acusatorio y las mismas iban dirigidas a sustraerle admisiones incriminatorias al peticionario, quien en ese momento era sospechoso de estar infringiendo la Ley de Armas. Ningún otro propósito podía tener el curso del interrogatorio al que fue sometido.

El segundo requisito también está presente. Como bien se ha resuelto, el concepto custodia policíaca ha sido definido para incluir no sólo la detención en el cuartel, sino también cualquier otra detención, aunque no sea por la comisión del delito de que se le sospecha y por el cual posteriormente se procesa. Lo determinante es que el sospechoso se encuentre efectivamente restringido en su libertad. *Pueblo v. Tribunal Superior,* 97 D.P.R. 199, págs. 200-201 (1909). Por ello, para determinar si una persona se encuentra bajo custodia resulta menester dilucidar si a la luz de la totalidad de las circunstancias en que se produce el encuentro entre el ciudadano y los agentes del orden público, el primero estaba en libertad de irse. *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988). Si la libertad de movimiento de la persona en algún modo queda restringida por la actuación policíaca, ésta se encuentra bajo custodia. *Florida v. Bostick,* 111 S.Ct. 2382, 2386 (1991). La restricción de la libertad implica

una custodia impuesta por el organismo investigador. *Orozco v. Texas,* 394 U.S. 3241 (1969); *Mathis v. U.S.,* 391 U.S. (1968). Es decir, *"...the ultimate inquiry is simply whether there is a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest." New York v. Quarles,* 467 U.S. 649, 655 (1984); *California v. Beheler,* 463 U.S. 1121, 1125 (1983); *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Podemos así afirmar que *"si el sospechoso está de alguna manera detenido, de forma tal que no está en libertad de irse, está bajo custodia."* Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos, supra,* sec 2.3 pag. 90■

Debemos no obstante señalar que existen situaciones de excepción que han sido reconocidas en lo que respecta a dicha regla de exclusión. Así se ha reconocido que no es necesario hacer dichas advertencias en casos que involucran la seguridad pública, *New York v. Quarles, supra;* manifestaciones hechas a particulares, *Estelle v. Smith,* 451 U S. 454 (1981); detenciones administrativas en el curso de una investigación en una institución penitenciaria, *Pueblo v. Falú Martínez, supra;* así como en el caso del interrogatorio a que es sometido un infractor de las leyes de tránsito, *"cuando el agente sólo se orienta para descubrir la identidad de éste". Pueblo v. Tribunal Suserior, supra,* pág. 204.

En relación con esta última excepción, la que resulta pertinente a la situación particular del caso que nos ocupa, ninguna duda debe existir en cuanto a que el interrogatorio en la vía pública que se hace al conductor de un vehículo tras una infracción de tránsito, no somete a éste a *"custodia policíaca"* en el sentido antes descrito, por lo que no es necesario impartir las advertencias. *Pueblo v. Tribunal Superior, supra.* Ahora bien, tal excepción está limitada, a intervenciones por infracción a las leyes de tránsito. Se explica y justifica dicha excepción por la naturaleza y consecuencias legales de la infracción, el carácter breve de la detención y la realidad de que de ordinario la detención se hace en un sitio público. *Berkemer v. McCarthy,* 468 U.S. 420 (1984). Como bien ha expresado el Tribunal Supremo, *"el interrogatorio a que se somete inicialmente a un infractor de las leyes de tránsito, **cuando el agente sólo se orienta para descubrir la identidad de éste,** no está cobijado por la doctrina de Miranda, toda vez que la identificación del infractor, aunque necesaria para el encausamiento no establece ningún elemento integrante del delito en sí". Pueblo v. Tribunal Superior, supra,* a la pág. 204. (subrayado nuestro). Por ello, si en el curso de la intervención por la infracción a la Ley de Tránsito el intervenido, luego de haber sido plenamente identificado, se convierte en sospechoso de la comisión de un delito no relacionado con dicha ley y el intervenido se encuentra bajo custodia policíaca, la investigación toma el cariz de acusatoria y es totalmente impermisible que los agentes continúen el interrogatorio en relación con la posible comisión de ese otro delito con miras a sustraerle una confesión o admisiones incriminatorias En ese momento las circunstancias cambian, pues nos encontramos frente a un sospechoso, bajo custodia, sujeto a un interrogatorio, lo que hace menester impartir las advertencias correspondientes. En tal caso, declaraciones obtenidas en violación a las normas indicadas sin habérsele impartido al sospechoso las advertencias de *Miranda,* son inadmisibles contra el acusado. Ilustrativo nos resulta lo indicado en *Rhode Island v. Innis,* 446 U.S. 291, 301-302 (1980), donde la Corte Suprema se expresa como sigue:

*"We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term interrogation under Miranda refers not only to express questioning but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practice, without regard to objective proof of the underlying intent of*

*the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogations can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response."* (Subrayado nuestro).

Aplicando ahora los principios antes reseñados a la situación particular del caso que nos ocupa puede apreciarse que la intervención de los agentes por la infracción a la Ley de Tránsito fue una legítima y que ninguna advertencia tenían que hacerle en el curso de la investigación mientras estaba ésta dirigida a descubrir su identidad. Ahora bien, una vez el peticionario fue plenamente identificado y la investigación tomó un giro acusatorio por un delito de naturaleza grave, no relacionado con la infracción de tránsito que dio base a la intervención original, los agentes venían obligados a impartirle las advertencias de *Miranda*. Ello se hace evidente al examinar el contenido de la declaración jurada prestada por el policía Deida Martínez, la que refleja que el peticionario fue sometido a un interrogatorio expreso con respecto a la posible comisión de un delito que no guardaba relación alguna con la infracción por la cual fue detenido originalmente, ello luego de haber sido plenamente identificado. Por la naturaleza del interrogatorio al que fue sometido, el agente Deida Martínez, debió haber sabido que su interrogatorio *"[was] reasonably likely to elicit an incriminating response." Rhode Island v. Innis, id*, como de hecho ocurrió.

Recapitulando, al momento de obtenerse las declaraciones del peticionario ya éste era sospechoso de la comisión de un delito y había sido plenamente identificado; no se sentía en libertad de irse sin permiso del policía; su declaración fue producto directo del interrogatorio expreso a que fue sometido por parte del agente Deida; y antes de que se comenzara el interrogatorio, los agentes no le hicieron al peticionario advertencia alguna sobre los derechos que le asistían, por lo que no medió renuncia por parte de éste a tales derechos. En estas circunstancias, las advertencias de *Miranda* eran indispensables para salvaguardar el derecho del peticionario contra la autoincriminación. Así, la actuación del agente Deida Martínez tuvo el efecto de activar la garantía establecida en el Artículo II, sección 10 de nuestra Constitución, a los efectos de que la evidencia obtenida en violación a la misma no será admisible en los tribunales.

Implícito en nuestro pronunciamiento anterior está que también concurre el tercero y cuarto requisito que debe satisfacerse para que tengan que hacerse las advertencias, a saber, que la declaración fue producto del interrogatorio o su equivalente funcional y que no se le hizo advertencia alguna al peticionario con anterioridad a la obtención de la declaración incriminatoria cuya supresión se solicita.

En cuanto a la consecuencia obligada de tal proceder por parte de los agentes, basta con señalar que la *"exclusión de evidencia ilegalmente obtenida se hace por consideraciones de política pública fundamentales al ordenamiento democrático establecido por la Constitución [... y en] nada tiene que ver con su valor probatorio, confiabilidad, ni con la búsqueda de la verdad, pues por definición, una regla de exclusión de evidencia tiene el efecto de eliminar evidencia pertinente a una controversia o a la credibilidad de un testigo". Del Toro Lugo v. Estado Libre Asociado*, \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 119,** a la pág. 163. No puede perderse de perspectiva que la regla de exclusión encarna tres propósitos insitos en la Carta de Derechos de nuestra Constitución: (1) disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional; (2) promover la integridad judicial, toda vez que los tribunales no deben ser cómplices de actos de desobediencia a la Constitución y admitir evidencia ilegalmente obtenida; y (3) impedir que el gobierno se beneficie de sus propios actos ilícitos, pues de lo contrario la ciudadanía perdería confianza en el gobierno. *Toll v. Adorno Medina*, \_\_\_ D.P.R. \_\_\_ (1992), **92 J.T.S. 49**, a la pág. 9429.

De este modo, en las circunstancias específicas del presente caso, forzoso resulta concluir que la evidencia derivada de la violación del derecho del peticionario a no autoincriminarse, consistente tanto de admisiones como del arma ocupada, son inadmisibles en evidencia.■ Incidió en consecuencia el tribunal al denegar la moción de supresión de evidencia presentada por el peticionario *Pueblo v. Rodríguez Rivera,* 91 D.P.R. 456 (1964); *Pueblo v. Alcalá Fernández* 109 D.P.R. 326 (1980); *Pueblo v. Ramos Delgado,* 122 D.P R. 287, 301 (1988).

Por los fundamentos anteriormente expuestos, resolvemos que resulta procedente la expedición del auto solicitado para revocar el dictamen recurrido. En consecuencia, se ordena y dispone la supresión de la evidencia impugnada mediante el recurso que nos ocupa y se devuelve el caso al tribunal de instancia para la continuación de los procedimientos en forma consistente con lo antes resuelto.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

**ESCOLIOS 95 DTA 178**

**1.** Véase Apéndice 4 a la Petición de *Certiorari.*

**2.** Véase Apéndice de la Petición de *Certiorari,* pág. 10.

**3.** El mismo dispone:

*"Art. 8 -Portación sin licencia de armas cargadas o sus municiones a la vez.*

*Toda persona que porte, conduzca o transporte cualquier pistola, revólver o cualquier otra arma de fuego cargada, o que porte, conduzca o transporte cualquier pistola, revólver, o cualquier otra arma de fuego y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver y otra arma de fuego, sin tener una licencia para portar armas expedida según más adelante se dispone, será culpable de delito grave."*

**4.** Véase Apéndice de la Petición de *Certiorari,* pág. 4.

**5.** Véase Minuta correspondiente a la vista efectuada el 16 de febrero de 1995, Apéndice de la Petición de *Certiorari,* pág. 1, así como el Escrito para Mostrar Causa presentado por el procurador, pág. 2.

**6.** Véase Minutas correspondientes a las vistas efectuadas el 16 y 22 de febrero de 1995, Apéndice de la Petición de *Certiorari,* págs. 1 y 2.

**7.** El privilegio contra la autoincriminación surge del Art. II, sec. 11 de la Constitución de Puerto Rico, el cual dispone en lo pertinente y de manera categórica que *"[n]adie será obligado a incriminarse mediante su propio testimonio [...]".*

**8.** Significativo resulta el testimonio prestado por el policía Félix Deida Martínez en ocasión de la vista de la moción de supresión que dio base al dictamen recurrido según expuesto por el peticionario en el recurso el que fue a los siguientes efectos:

*"C. "Yo le indiqué a él que estaba denunciado y él me dijo que hiciera lo que tenía que hacer, que él no le iba a pedir perdón.*

*P. En otras palabras, él le estaba pidiendo que lo denunciara para él poderse ir.*

*C. Eso es así.*

*P. Entonces usted le informa que él no se podía ir porque estaba sin licencia.*

*C. Eso es así, y que lo iba denunciar.*

*P. En otras palabras él estaba detenido y bajo su custodia, él no se podía ir.*

*C. El no se podía ir porque no tenía licencia de conducir. Yo le dije a él que lamentablemente no podía conducir el vehículo y que me tenía que acompañar hasta el cuartel."*

Este extremo no fue objeto de impugnación por el Procurador General en su escrito en cumplimiento de orden.

**9.** Sabido es que, si bien la doctrina del *"fruto del árbol ponzoñoso"* opera generalmente en el contexto de evidencia derivada de registros y allanamientos irrazonables, la misma también es de aplicación en casos en que la evidencia cuya supresión se solicita es producto de una violación del derecho contra la autoincriminación:

*"The 'fruit of the poisonous tree' doctrine is in no sense limited to cases in which there has been a violation of the Fourth Amendment. It has been utilized with respect to other kinds of constitutional violations as well, such as unconstitutionally conducted lineups and unconstitutionally obtained **confessions**. Wayne La Fave, Search and Seizure: A Treatise on the Fourth Amendment, 2nd ed., West Publishing Co., St. Paul (1987), Vol. 4, sec. 11.4, pág. 371."* (Subrayado nuestro).