EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GERARDO ADORNO QUIÑONES, acusado y apelante.

Número: CR-73-28     Resuelto: 17 de mayo de 1973

R. N. Ponce de Sánchez Revoleda, abogada del apelante; J. F. Rodríguez Rivera, Procurador General Interino, Cándita R. Orlandi, Procuradora General Auxiliar, abogados de El Pueblo.

PER CURIAM: Del juicio seguido al apelante por el delito de escalamiento en primer grado resultó que doña María Asunción Lozano de 57 años de edad y ciega, con limitada percepción de contraste entre luz y tinieblas, vivía sola separada de su marido en su casa del Barrio Almirante Norte de Vega Baja, donde subsistía gracias a los alimentos y auxilios que humanitariamente le proveía su vecina y comadre doña Josefina Meléndez. Temprano en la noche del 16 de octubre de 1965, al despedirse su vecina, doña María Asunción cerró su casa. Al percibir la oscuridad encendió una lámpara. Sintió pasos de una bestia que amarraban y los de un hombre; luego ruidos de aldaba de la cocina como tratando de abrir y los de una persona que entró y apagó la lámpara la cual ella encendió otra vez, repitiéndose la acción de apagarse y vuelta a encender la lámpara, cuando recibió un golpe en la cabeza y acto seguido un hombre sin decir palabra la arrinconó contra un seto y la violó. Era un hombre de manos pequeñas; no era su esposo Carlos. Al marcharse el asaltante se acostó doña María Asunción adolorida y sangrando en una hamaquita.

Al rato se presentó el mismo individuo esta vez con un machete con el cual la hincó, la tiró sobre la cama y la violó por segunda vez. Supo que su agresor era el acusado porque al éste hablarle conoció su voz como la de uno que oía hablar con frecuencia pues trabajaba cerca de la casa de la agraviada y por allí amarraba su caballo y escampaba la lluvia, y oía a los demás llamarle Gerardo. El testimonio de la ofendida fue corroborado por el de su vecina doña Josefina a quien relató los hechos tan pronto ésta fue a visitarla; y un médico que examinó a la perjudicada describió la herida de la cabeza y la condición traumática en sus muslos y vagina, que atribuyó a contacto sexual con varón. Para corroborar la identificación del acusado el Estado presentó como testigo al Alguacil de la Sala quien relató ante el jurado cómo ese mismo día en privado, y a instancias del fiscal la agraviada había identificado por su voz y por las manos pequeñas al apelante, quien se hallaba entre otras personas a todas las cuales hizo el fiscal preguntas de modo que al contestarlas pudieran apreciarse los respectivos timbres de voz. En dicha prueba o experimento el acusado estuvo acompañado de su abogado.

El acusado no presentó prueba de clase alguna y el jurado trajo un veredicto de culpabilidad. Desestimada una moción de nuevo juicio el apelante fue sentenciado a la pena de 10 a 15 años de presidio.

Señala como errores en este recurso [1] que se vulneraron el debido proceso de ley y su derecho a un juicio justo al admitirse el testimonio del Alguacil en que relata el experimento de comparación de voces; [2] que dicho testimonio es prueba de referencia y constituyó elemento de sorpresa.

■ [1 y 2] Los únicos dos errores señalados atacan la introducción de prueba sobre el referido experimento de comparación de voces en el curso del cual una vez más la ofendida identificó al atacante por su voz y sus manos. No hubo error. No se obtuvo del apelante declaración u otra forma de eviden-

cia testimonial proscrita por el privilegio contra la auto-incriminación. La voz, como el cuerpo de una persona, son características físicas de identificación excluidas del precepto constitucional que prohibe la autoincriminación. "Las características físicas de la voz de una persona, su tono y estilo, aun cuando no el contenido de una conversación específica, están constantemente expuestas al público. Al igual que sus rasgos faciales o su letra, su voz se manifiesta reiteradamente para que otros la oigan. Nadie puede razonablemente esperar que otros no conozcan el sonido de su voz, como tampoco podría esperar que su rostro sea un misterio para el mundo." *United States* v. *Dionisio*, 410 U.S. 1 (1973) (22 de enero de 1973—35 L.Ed2d 67).[1] Y en Puerto Rico siguiendo a Wigmore se ha dicho: "El privilegio protege al individuo de hacer revelaciones *que se pretenda arrancarle como testigo en un proceso legal en su contra* . . . El límite del privilegio es claro . . . una inspección de las características físicas por el Tribunal o por los testigos no puede constituir una violación del privilegio, porque no exige nada del acusado como testigo, esto es, con la responsabilidad de su testimonio . . . lo que se obtiene del acusado por medio de ese acto no es una declaración acerca de su cuerpo sino su cuerpo en sí." *Pueblo* v. *Aspurúa,* 61 D.P.R. 252, 255–56 (1943).

Se ha aceptado generalmente que el privilegio contra autoincriminación no protege contra la compulsión de someterse a toma de huellas digitales, fotografías o medidas; escribir o hablar a los fines de ser identificado; presentarse al tribunal, ponerse de pie, adoptar determinada posición, andar o hacer un gesto particular. Lo que el privilegio sí excluye son las comunicaciones o testimonio del individuo, no la evidencia

---

[1] Con igual razonamiento se ha admitido la muestra de voz por no vulnerar la Enmienda IV de la Constitución de los Estados Unidos que proclama la inviolabilidad de la persona contra registros y arrestos irrazonables considerados intrusión en su vida privada. *United States* v. *Dionisio,* supra.

real o física derivada de la persona del sospechoso o acusado. *Holt* v. *United States*, 218 U.S. 245; *Schmerber* v. *California*, 384 U.S. 757. Cuando en línea de identificación (*line-up*) se obligó al acusado de robar en un banco a repetir las palabras que alegadamente había pronunciado el ladrón, no se consideró infringido el precepto relativo a autoincriminación pues según criterio del Supremo Federal "se exigió del acusado que usara su voz como característica física de su identidad, no para declararse culpable." *United States* v. *Wade*, 388 U.S. 218.

▪ El testimonio del Alguacil no constituyó prueba de referencia, sino evidencia directa del experimento por él presenciado, y por tanto admisible. Art. 38 de la Ley de Evidencia, 32 L.P.R.A. sec. 1732.

Adicionalmente, la perjudicada en su testimonio oral en el juicio ya había identificado a su atacante por la voz, y la declaración del Alguacil era admisible para corroborar esa identificación. No se presentó como un sustituto en ausencia de identificación original, sino como evidencia de corroboración de la ya realizada por la ofendida. El apelante estuvo debidamente asistido de abogado durante el experimento de comparación de voces y se sometió voluntariamente al mismo, pues no hubo necesidad de orden del tribunal al efecto. Estas circunstancias distinguen el presente caso del de *Pueblo* v. *Tribunal Superior*, 96 D.P.R. 397, 398, 402 (1968), donde la muestra de caligrafía se tomó en la etapa crítica de investigación, sin asistencia de abogado ni advertencia alguna, con la grave consecuencia de ser la así extraída elemento probatorio esencial en aquel caso de falsificación.

*Por los fundamentos expresados, se confirmará la sentencia apelada.*