EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ E. RODRÍGUEZ MAYSONET, acusado y apelante.

*Número:* CR-85-34      *Resuelto:* 30 de junio de 1987

*Carmen Ana Rodríguez Maldonado,* de la Sociedad para Asistencia Legal, abogada del apelante; *Rafael Ortiz Carrión, Procurador General, Marjorie Rivera Rodríguez, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El apelante fue juzgado ante el Tribunal Superior de Puerto Rico, Sala de Arecibo, en relación con varios casos de violación, sodomía, robo y restricción a la libertad agravada ocurridos —en distintas fechas y con distintas perjudicadas— en la jurisdicción del pueblo de Manatí, Puerto Rico.(1) El jurado que intervino, como juzgador de los hechos, en dicho proceso rindió veredictos absolutorios en todos los casos *excepto* en cuanto a los cargos relacionados con la joven Ivette Ortiz Menéndez. El tribunal de instancia dictó sentencia condenando al apelante a cumplir, en forma concurrente, treinta años de reclusión por el delito de violación, doce años por el delito de sodomía, doce años por robo y tres años por el delito de restricción a la libertad agravada.

En apelación se le imputa al foro de instancia la supuesta comisión de ocho errores, a saber:

A. Erró el Honorable Tribunal de Instancia al declarar No Ha Lugar la Moción de Supresión de Identificación, en violación al debido procedimiento de ley y la jurisprudencia aplicable.

B. Erró el Honorable Tribunal de Instancia al considerar la Moción de Supresión de Identificación dentro del juicio por jurado, no obstante haber sido presentada oportunamente antes del juicio, permitiendo con ello que pasara al jurado prueba sobre la identificación que es confusa,

---

(1) El Ministerio Público radicó ante dicho tribunal acusaciones por cinco (5) cargos por violación, tres (3) cargos por sodomía, cuatro (4) cargos por robo y cuatro (4) cargos por restricción a la libertad agravada; dichos cargos en relación con cuatro supuestas perjudicadas.

inadmisible y sin hacer una determinación previa como cuestión de derecho. Todo ello en violación al debido proceso de ley y al derecho constitucional a un juicio por jurado justo e imparcial.

C. Erró el Honorable Tribunal de Instancia al admitir en evidencia una fotografía del acusado que de la propia prueba del Ministerio Público surge que no era la que le fue mostrada a la perjudicada Ivette Ortíz [*sic*]. La misma era inexistente al momento en que se hizo la identificación por fotografías. Se admitió no obstante haber sido oportunamente objetada y en violación al debido proceso de ley y al derecho a contar con un juicio justo e imparcial.

D. Erró el Honorable Tribunal de Instancia al no suprimir como evidencia, en los casos que se apelan, el "cartapacio" de fotografías en el cual se incluye úna foto del aquí apelante, no obstante haber declarado la perjudicada Ivette Ortíz [*sic*] que las fotos se las mostraron sueltas y sin haberse levantado la correspondiente acta que exige la Regla 252.2 de Procedimiento Criminal, todo ello a pesar de la oportuna objeción de la defensa y en violación al debido proceso de ley y la jurisprudencia aplicable.

E. Erró el Honorable Tribunal de Instancia al admitir en evidencia el cartapacio de fotografías para los casos en que la perjudicada era Ivette Ortíz Meléndez [*sic*], a pesar de ser objetada su admisibilidad por haberse solicitado mediante Moción bajo la Regla 95 y no haber sido ofrecido por el Ministerio Público para dichos casos, y sí para los casos en que la perjudicada fue Jeannette Meléndez Solla, casos por los que finalmente el acusado fue absuelto. El Ministerio Público vino a alegar por primera vez en el juicio que el mismo cartapacio de fotos se utilizó para las identificaciones por fotografía en los casos de ambas perjudicadas. Todo esto se hizo en violación de la Regla 95 de Procedimiento Criminal y del debido procedimiento de ley.

F. Erró el Honorable Tribunal de Instancia al no determinar como cuestión de derecho que la identificación no fue confiable a la luz de los criterios establecidos en los casos de *Pueblo* vs. *Morales Rivera,* 112 D.P.R. 463 (1982); *Pueblo* vs. *Rey Marrero,* 109 D.P.R. 739 (1980); *Pueblo* vs.

*Peterson Pietersz,* 107 D.P.R. 172 (1978); *Pueblo* vs. *Rosso Vázquez,* 105 D.P.R. 905 (1972); y *Pueblo* vs. *Gómez Incera,* 97 D.P.R. 249 (1969).

G. Erró el Honorable Tribunal de Instancia al no determinar como cuestión de derecho que las circunstancias de los casos exigían la utilización del método de identificación de "line up" de voces, ya que la propia perjudicada declaró que podía reconocer a su agresor por la voz, lo cual había indicado a la agente que investigó el caso, y los hechos ocurrieron de noche en un paraje solitario sin alumbrado, no había luna visible, según declaró el perito y testigo de defensa, Garred A. Giles, y el agresor estaba enmascarado con un pañuelo, todo ello en violación al debido procedimiento de ley y el derecho a un juicio justo e imparcial.

H. Erró el Honorable Tribunal de Instancia al determinar como cuestión de hecho y de derecho que se estableció la identidad y culpabilidad del acusado más allá de duda razonable, en violación a la Regla 110 de Procedimiento Criminal y al debido procedimiento de ley. Alegato del Apelante, págs. 20-21.

I

Para el 3 de febrero de 1984 —fecha de la alegada comisión de los hechos— la joven Ivette Ortiz Menéndez contaba con diez y nueve años de edad. Estudiaba de día en uno de los colegios regionales de la Universidad de Puerto Rico y trabajaba de noche en una farmacia. El día de los hechos, como a eso de las 11:00 P.M., la joven Ortiz Menéndez se encontraba conversando con un amigo —en el automóvil de éste— en la playa "Los Tubos" de Manatí, Puerto Rico. De repente se les acercó un individuo —portando un revólver y con el rostro cubierto con un pañuelo de la nariz hacia abajo— quien despojó a ambos de sus prendas personales, obligó al acompañante de la perjudicada a introducirse en el baúl del carro, luego de lo cual condujo dicho vehículo de motor a un paraje solitario cercano. En

dicho lugar, bajo amenaza de inferirle grave daño corporal, violó y sodomizó a la joven Ortiz Menéndez.

Habiendo transcurrido aproximadamente un mes desde la ocurrencia de los hechos y encontrándose la joven perjudicada en su trabajo sucedió —en palabras de ella a preguntas del Ministerio Público durante el juicio celebrado— lo siguiente:

.        .        .        .        .        .        .        .

F: ¿Qué ocurrió, si ocurrió algo, en su trabajo?

T: Este ... Luego de eso, como un mes más tarde, si mal no recuerdo, apareció este individuo a la Farmacia donde yo estaba, al "counter" donde yo me encontraba esa tarde ... , esa noche, perdón. Me dijo por estas palabras: Oye chica, déjame ver esa calculadora. El de momento no me vio, porque yo estaba ... doblada escribiendo algo en el "counter". Tan pronto él me dijo esa oración, la ... primera palabra que me dijo, oye chica, *ya yo estaba segura en ese momento de que ése había sido el acusado.* Me doblé cuidadosamente a buscar la calculadora, *por el cristal de la vitrina lo miré.* Cuando él me vió se llevó la calculadora *sin esperar cambio, garantía, nada* ... Simplemente se fue. Luego de eso, yo llamé a mi tía, a la casa. Le dije, esto ... : Madrinita, ví al individuo que me atacó en la playa, lo ví. Ella me preguntó y recalcó si el ... si yo estaba segura y yo le dije: Sí, estoy segura.

F: ¿En qué se basaba usted en ese momento para determinar que esa persona que estaba comprando una calculadora es el aquí acusado?

T: Porque ... *De hecho, esa noche cuando el individuo ... Tenía que hablar porque me decía cosas ... y yo me grabé* ... fue tan ... es que ... para ... para uno estar tan seguro de lo que está diciendo es que hay que pasar una experiencia como esta. *Y estoy segura de que era él. Estaba en ese momento tan segura como que me llamo Ivette Ortíz Meléndez [sic]* ... (LLORA) ... *de que él fue el individuo que abusó de mí.*

F: ¿Qué hizo usted joven, una vez esa persona se fue?

T: Pues como le dije anteriormente, pedí permiso en la Farmacia para llamar a mi tía. *Le dije que había visto al individuo y ella, pues, me preguntó que si yo estaba*

*completamente segura y yo le dije que sí.* Entonces ella me dijo: No te muevas de ahí, que voy a llamar al Cuartel de la Policía. Ahí ella llamó y se comunicó ... se comunicó con el ... Teniente Pagán, cuando eso era Teniente, y él dijo que ... que yo no me moviera de la Farmacia, le dijo a ella después ... que me contaron, que no me moviera de la Farmacia, me dijo mi tía ... que no me moviera de la Farmacia, que ella iba a llamar al Cuartel de la Policía, llamó al Teniente y él salió a dar vueltas. Cuando salió de ... que salió, fue a la Farmacia donde yo estaba y me preguntó que cómo estaba vestido el individuo y yo le dije y salió.

F: ¿Cómo vestía el individuo ese día?

T: Tenía una camisa en algodón, a cuadros, un mahón ... y un mahón.

F: ¿En esta ocasión estaba sol[o] o estaba acompañad[o] de alguien?

T: Estaba solo.

F: *¿Por qué tiempo usted lo está viendo allí en la Farmacia?*

T: En la Farmacia ... *él estuvo como alrededor de unos cinco o seis minutos,* porque es desde que él me pide la calculadora, yo me doblo, lo veo y cuando me ve, se va ... sin esperar el cambio y sin nada. *Como unos cinco o seis minutos yo calculo.* (Énfasis suplido.) T.E., págs. 22–23.

## II

Según ello se desprende de una lectura de los ocho errores que el apelante le imputa haber cometido al tribunal de instancia, la contención principal de éste es a los efectos de que el "procedimiento de identificación", llevado a cabo por las autoridades con anterioridad a la radicación de los correspondientes cargos criminales contra el apelante, fue uno plagado de errores, sugestivo y poco confiable.[2] Plantea, en adición, que el tribunal de instancia, durante

---

[2] En específico señala —como prueba de la poca confiabilidad de la identificación— que la perjudicada, durante el proceso celebrado, al preguntársele si la persona que observó en el trabajo era el acusado, en forma categórica expresó: "Parecido, porque no es igual." T.E., pág. 74.

el proceso celebrado, cometió error en la admisión de cierta y determinada prueba relacionada con dicho procedimiento de identificación. Toda esta situación, en opinión del apelante, amerita y conlleva la supresión de la identificación que de él se hiciera por la perjudicada y, en su consecuencia, la revocación de las sentencias apeladas. No le asiste la razón; veamos por qué.

## III

No puede haber duda en la mente de persona alguna del hecho de que nunca puede haber una convicción sin prueba que "conecte" o "señale" a un imputado de delito, más allá de duda razonable, como el responsable de los hechos delictivos que se le imputan. Es por ello que la "identificación" del acusado es una de las etapas más esenciales o críticas en el procedimiento criminal, *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249, 251 (1969); *Pagán Hernández* v. *Alcaide,* 102 D.P.R. 101, 112 (1974), por cuanto la admisión en evidencia de prueba viciada sobre identificación puede constituir una violación del debido procedimiento de ley. *Manson* v. *Brathwaite,* 432 U.S. 98 (1977); *Kirby* v. *Illinois,* 406 U.S. 682 (1972).

Hay que mantener presente, sin embargo, que la determinación sobre si dicha prueba constituye o no una violación del debido proceso en un caso en particular depende de la *totalidad de las circunstancias* presentes en el mismo. Esto es, la *norma vigente* en nuestra jurisdicción, como resolvimos en *Pueblo* v. *Peterson Pietersz,* 107 D.P.R. 172, 183 (1978):

> ... hace depender la *confiabilidad* de la identificación de la *"totalidad de las circunstancias",* aun cuando el procedimiento de confrontación haya sido sugestivo. *Se señalan como factores principales que deben guiar* la posibilidad de un error de identificación la oportunidad que

tuvo el testigo de observar al ofensor al tiempo en que cometía el crimen, el grado de atención del testigo, la corrección de la descripción previa del criminal por el testigo, el nivel de certeza demostrado por el testigo en la confrontación, y el tiempo transcurrido entre el crimen y la confrontación. ... *La admisión de testimonio relativo a un procedimiento sugestivo e innecesario de identificación, no viola el debido proceso siempre y cuando la identificación tenga suficientes elementos de confiabilidad.* (Énfasis suplido y citas omitidas.)

■ Ahora bien, no podemos perder de vista que los requisitos o directrices exigidos por la Regla 252 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 252, son principalmente aplicables y tienen el propósito de regular el procedimiento de identificación cuando éste está en manos, o es dirigido o controlado, por los funcionarios del Estado encargados de la seguridad pública de nuestro país. Véase Exposición de Motivos de la Ley Núm. 199 de 23 de julio de 1974.[3]

---

[3] "Para estatuir una nueva Regla 252 de Procedimiento Criminal de Puerto Rico a fin de establecer un Procedimiento Uniforme de Identificación con anterioridad al Juicio; y para renumerar las [R]eglas 252, 253 y 254 como [R]eglas 253, 254 y 255 respectivamente.

"EXPOSICIÓN DE MOTIVOS

"La ausencia de normas claras y precisas basadas en las guías jurisprudenciales sobre identificación anterior al Juicio en el procedimiento criminal ha dado lugar a absoluciones de acusados por ese motivo. El Tribunal Supremo de Puerto Rico y el Tribunal Supremo Federal se han expresado *sobre la necesidad de que la Policía y los fiscales cumplan con dichas normas jurisprudenciales* así como sobre la deseabilidad de que la legislatura reglamente los procedimientos de identificación anteriores a juicio.

· "El Informe de la Comisión para el Estudio de la Policía del Consejo sobre la Reforma de la Justicia en Puerto Rico, al recomendar legislación diseñando un procedimiento uniforme de identificación anterior al juicio, expresó con claridad las ventajas y objetivos de esta reglamentación.

"El establecimiento de dicho procedimiento persigue varios propósitos entre los cuales destacamos los que a continuación se exponen:

"En primer lugar[,] un procedimiento uniforme en ese sentido promoverá *el que la Policía cumpla* con las mejores normas de identificación evitando así absoluciones de delincuentes debido a identificación inadecuadas.

■ Ello por razón de que se "teme" que los funcionarios del Estado a cargo del procedimiento de identificación en un caso en particular "interfieran" indebidamente con los testigos de los hechos "sugiriéndoles" a éstos la persona que deben identificar. Dicha situación, como es sabido, puede viciar irremediablemente la identificación realizada por cuanto "[l]a experiencia ha demostrado que una vez un testigo señala al acusado en la confrontación, no es de esperarse que se retracte más tarde, ..." *Pueblo* v. *Gómez Incera,* ante, pág. 254.

Dicho "temor" no tiene razón alguna de ser cuando la identificación del imputado de delito es realizada por la víctima o el testigo por sí solo, esto es, sin intervención de clase alguna de funcionarios del Estado. Somos del criterio que posiblemente ésta sea la identificación más espontánea y confiable que pueda darse. De hecho, en una situación de esta naturaleza realmente no hay problema de identificación.

Así expresamente lo reconocimos hace más de una década en *Pueblo* v. *Bell Pound,* 101 D.P.R. 41 (1973), único caso en nuestra jurisprudencia en que hemos tenido la oportunidad de expresarnos al respecto. En dicho caso, luego de que los perjudicados de un asalto a mano armada dieran cuenta del mismo a la Policía de Puerto Rico, se trasladaron al aeropuerto internacional por cuanto pensaron que existía la posibilidad de que sus asaltantes, por ser extranjeros, se encontraran allí. Estando en los

---

"En tal sentido el Tribunal Supremo de Puerto Rico en el caso de *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249 (1969), cita con aprobación unas manifestaciones del Profesor Daniel E. Murray a los efectos de que casi todos, si no todos, los ataques al proceso de confrontación se podrían evitar por un estatuto uniforme modelado a base de las mejores características de los ordenamientos civiles.

"En segundo lugar, una reglamentación a esos efectos imprimirá mayor confiabilidad al proceso de identificación criminal pudiéndose anticipar un enfoque judicial más perceptible." (Énfasis suplido.) 1974 Leyes de Puerto Rico, Parte 2, 90, 91.

predios del aeropuerto alcanzaron a ver a los mismos, siendo éstos arrestados al ser señalados por los perjudicados a los agentes del orden público.

Al rechazar la contención de los allí apelantes a los efectos de que "la identificación estuvo viciada de sugestividad, que no tuvieron asistencia legal en esa etapa de los procedimientos y que no se siguió la norma sentada en *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969), que requiere la participación del acusado en unión con otras personas de circunstancias exteriores semejantes en el procedimiento de identificación", *Pueblo* v. *Bell Pound*, ante, pág. 42, expresamos:

> Los apuntamientos adolecen de un vicio fatal: No tienen apoyo alguno en la prueba desfilada. *Los apelantes parten en su alegato de un enfoque equivocado pues no hay en este caso un problema de identificación.* ...
>
> . . . . . . . .
>
> Quizás no se encuentre un caso de mayor espontaneidad en la identificación que el caso de autos. La identificación la hicieron los propios perjudicados a iniciativa propia y antes de que se verificara el arresto por los delitos cometidos contra ellos. En esa etapa todavía no había intervenido la maquinaria policial y, por lo tanto, no era necesario la asistencia de abogados *ni la aplicación de las normas sentadas en Gómez Incera*, supra. (Énfasis suplido.) *Pueblo* v. *Bell Pound*, ante, págs. 42–44.

Lo anteriormente expresado realmente hace innecesaria la discusión por separado de los ocho (8) errores que le imputa el apelante al tribunal de instancia. No obstante el caso de autos presentar unas variantes no presentes en el caso de *Pueblo* v. *Bell Pound*, ante, lo allí decidido resulta determinante. En el presente caso, según el testimonio vertido por la perjudicada, los hechos delictivos tuvieron una duración aproximada de cuarenta y cinco (45) minutos. *Durante ese período de tiempo, el apelante estuvo hablándole a la perjudicada. Su voz quedó grabada en la mente de ésta.*

Treinta días más tarde, *sin intervención de clase alguna por parte de funcionarios del Estado*, la perjudicada reconoce esa voz *inmediatamente que la escucha* en su sitio de trabajo. Observa, *durante cinco o seis minutos*, la persona de quien proviene la voz. *El físico de dicha persona corresponde al individuo que la violó y sodomizó*. En sus propias palabras, en ese momento, estuvo tan segura de que se trataba del individuo que la tuvo atemorizada durante cuarenta y cinco minutos "como que me llamo Ivette Ortiz Menéndez".

■ Como es sabido, la voz como el cuerpo de una persona son características físicas de identificación. "Al igual que sus rasgos faciales o su letra, su voz se manifiesta reiteradamente para que otros la oigan. *Nadie puede razonablemente esperar que otros no conozcan el sonido de su voz, como tampoco podría esperar que su rostro sea un misterio para el mundo*". (Énfasis suplido.) *Pueblo* v. *Adorno Quiñones*, 101 D.P.R. 429, 432 (1973).

■ La identificación que del apelante realizara la perjudicada en su trabajo —unida, naturalmente, con la realizada en corte— es suficiente por sí sola para sostener las convicciones decretadas. La misma fue una espontánea, confiable, independiente y anterior a la intervención de la Policía *que hacía innecesaria* la identificación del apelante por cualquiera de los dos métodos contemplados por la citada Regla 252 de Procedimiento Criminal. *Pueblo* v. *Bell Pound*, ante. Cualquier expresión en contrario contenida en *Pueblo* v. *García Reyes*, 113 D.P.R. 843, 847 (1983) debe entenderse expresamente revocada.

■ No debe perderse de vista que luego que la perjudicada identifica por su voz al apelante, observa a éste por un período de cinco a seis minutos. Ello constituye fundamento adicional en apoyo de la conclusión de que resultaba innecesario llevar a cabo una rueda de detenidos

por cuanto la misma "es un instrumento en reserva cuando la confusión, el correr del tiempo, la difícil percepción, el recuerdo tenue, la inseguridad del testigo, o cualquier otro factor en evaluación lógica enerve la razonable certeza exigida de quien señala al autor del delito". *Pueblo* v. *Suárez Sánchez*, 103 D.P.R. 11, 19 (1974), ninguno de los cuales factores está presente en el caso de autos.[4]

■ Por otro lado, el uso de fotografías por parte de los agentes del orden público en el presente caso tampoco tiene la importancia que le atribuye el apelante. La identificación que de él hiciera la perjudicada no se basó en dichas fotografías. Como expresáramos en *Pueblo* v. *Falú Martínez*, 116 D.P.R. 828, 841 (1986), las "fotografías sirvieron más bien como prueba corroborativa" del testimonio de la perjudicada.[5]

Por las razones antes expresadas, *se dicta sentencia confirmatoria de las dictadas por el Tribunal Superior de Puerto Rico, Sala de Arecibo.*

El Juez Asociado Señor Hernández Denton concurre en el resultado sin opinión escrita.

---

[4] Otra situación en que hemos entendido innecesario la utilización de los métodos de identificación que provee la Regla 252 de Procedimiento Criminal ha sido cuando el testigo conoce al acusado con anterioridad a los hechos que se le imputan a éste. Véanse: *Pueblo* v. *García Reyes*, 113 D.P.R. 843, 848 (1983); *Pueblo* v. *Falú Martínez*, 116 D.P.R. 828 (1986).

[5] Por último —en cuanto al señalamiento específico que hace el apelante, como "prueba de la poca confiabilidad" de la identificación realizada, a los efectos de que la perjudicada al preguntársele si la personá que observó en el trabajo era el acusado, en forma categórica expresó: "Parecido, porque no es igual"— debemos señalar que una lectura del récord taquigráfico demuestra, sin lugar a dudas, que dicha pregunta y respuesta no se refería al apelante propiamente y sí al *boceto* que de éste había preparado la Policía de Puerto Rico a base de la descripción que originalmente había brindado la perjudicada. (Véanse: págs. 73, 74 y 75 de la transcripción de evidencia.) Los abogados de las partes, antes de elaborar argumentos de esta naturaleza, deben corroborar los hechos en que basan los mismos, ya que pueden inducir a error a los tribunales al así actuar.