Rodríguez García, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El apelante en el presente caso, Melvin Miranda Valdés, (en adelante "Melvin"), solicita que revisemos una sentencia emitida el día 24 de junio de 1997. En la sentencia, el Tribunal de Primera Instancia, Sala Superior de Mayaguez, condenó a Melvin a cuatro (4) años de cárcel más al pago de las costas del caso por infracción al Artículo 87 del Código Penal de Puerto Rico. Inconforme con dicho dictamen, en 22 de julio de 1997, Melvin interpuso, ante nos, un escrito de apelación.
Luego de examinar el recurso y los documentos anejados al mismo, resolvemos, a la luz del derecho aplicable, confirmar la sentencia apelada.
I
En 13 de junio de 1996, en horas de la tarde, Isabel Sotero Irizarry, (en adelante "Isabel"), y Roddy Román Figueroa, (en adelante "Roddy"), se encontraban transitando por la Carretera Número 2 en dirección de Yauco hacia Mayaguez en un Mitsubishi Mirage de 1993. [Exposición Narrativa de la Prueba, pág. 40; "Moción Solicitando Desestimación Bajo Regla 64(P) de Procedimiento Criminal", pág. 52 de los autos originales]. Debido a la lluvia, Roddy le aconsejó a Isabel que se detuvieran en el paseo para evitar un posible accidente. Isabel se estacionó, con las luces intermitentes del automóvil prendidas, en el paseo derecho de la Carretera Número 2 en dirección de Sabana Grande a San Germán, aproximadamente, en el Kilómetro 177.8. [Exposición Narrativa de la Prueba, págs. 5 y 40].
A su vez, Miriam Muñiz Varela, (en adelante "Miriam") transitaba en un Mitsubishi Eclipse de 1995 junto a María del Mar Chaulisán González, (en adelante "María"), por la Carretera Número 2 hacia Boquerón cuando al automóvil se le prendió una luz en el tablero. Asustada por esto, Miriam decidió detenerse en el paseo, pero el automóvil comenzó a resbalar. En ese momento, María se percata que van a chocar al Mitsubishi Mirage que se encuentra en el paseo, por lo que intentó girar el guía para desviar el auto. Sin embargo, el automóvil no cambió de dirección e impactó al Mitsubishi Mirage, el cual resbaló hacia el área verde de la carretera. ["Moción Solicitando Desestimación Bajo Regla 64 (P) de Procedimiento Criminal", pág. 51 de los autos originales]. Como consecuencia del impacto, *1035 ambos automóviles sufrieron daños materiales, pero ninguna de las personas envueltas en el accidente sufrieron daños físicos, excepto algunos machucones. [Exposición Narrativa de la Prueba]
Posteriormente, el agente Carlos R. Garayúa Pacheco, (En adelante "Garayúa”), se presentó en el lugar, luego de recibir, por radio, la información de que había ocurrido un accidente entre dos vehículos de motor. [Exposición Narrativa de la Prueba, pág. 16]. Cuando llegó al lugar de los hechos el Mitsubishi Mirage se encontraba en el paseo y el Mitsubishi Eclipse se encontraba en el área verde. Garayúa procedió, entonces, a tomar los datos a los conductores de ambos vehículos. [Exposición Narrativa de la Prueba, pág. 5]. Poco a poco, el lugar se fue llenando de curiosos y el tránsito se tomó más lento. [Exposición Narrativa de la Prueba, págs. 20 y 29).
Unos minutos después, el gruero Luis A. Montalvo Suarez gritó "mira como viene ese camión", refiriéndose a un Mack tumba de 1977, conducido por Melvin Miranda Valdés. [Exposición Narrativa de la Prueba, págs. 6 y 36). El camión venía fuera de control. Ante esta situación, Melvin decidió desviar el camión hacia el paseo, para evitar así impactar a los automóviles que transitaban por ambos carriles, sin percatarse que el paseo se encontraba ocupado por vehículos y personas. [Exposición Narrativa de la Prueba, págs. 52-53]. Cuando las personas se dan cuenta de que el camión esta fuera de control comienzan a correr hasta que el camión, se sale del paseo, hacia el área verde y se detiene en la hondonada. Como resultado de este segundo accidente, el camión destruyó la barrera de metal de seguridad, impactó a María y al Mitsubshi Mirage y los arrastró con él hacia la hondonada. [Exposición Narrativa de la Prueba, pág. 6-7, 12 y 43]. Desgraciadamente, María murió como consecuencia del impacto.
Luego de los procedimientos pertinentes, se determinó causa probable para acusar a Melvin en 19 de septiembre de 1996. La Acusación en contra de Melvin lee como sigue:
"... ilegalmente y mientras conducía un vehículo de motor, lo hizo con tal descuido, imprudencia crasa y temeraria, demostrando un absoluto menosprecio de la seguridad de los demás, consistente en que mientras transitaba por la carretera número 2, en dirección de San Germán a Mayaguez, al llegar al kilómetro 177.9, perdió el control, ya que conducía dicho auto a una velocidad que no le permitía ejercer el pleno dominio y control del volante, además no tomó consideración de que la carretera estaba mojada, ya que estaba lloviendo, dando lugar a que pórlal descuido y negligencia, se desviara hacia la derecha, impactando la barrera de seguridad con su lado derecho, y a su vez impactando con su parte delantera a la peatón María del Mar Chaulisán González, acto seguido también impactó con su parte delantera el vehículo de motor marca Mitsubishi, año 1993, tablilla BRV-746, propiedad de Martín Sotero Irizarry, arrastrando a la peatón, y al auto por espacio de 29 pies, ocasionándole la muerte en el acto a la señora, María del Mar Chaulisán González." [Autos Originales, pág. 1].
En 1 de mayo de 1997 se celebró el juicio por Tribunal de Derecho, debido a que Melvin renunció a su derecho ajuicio por jurado. [Autos Originales, pág. 135]. En 5 de mayo de 1997, el Tribunal encontró culpable a Melvin del delito imputado. [Autos Originales, págs. 163-164]. En 24 de junio de 1997 se dictó sentencia en la cual el Tribunal condenó a Melvin a 4 años de cárcel, más las costas del pleito y se ordenó al Departamento de Transportación y Obras Públicas le suspendiera la licencia de conducir por el período de la sentencia. Sin embargo, a Melvin se le concedió el privilegio de sentencia suspendida con las siguientes condiciones especiales:

"1. Deberá ser evaluado por ASSMCA y se someterá al programa interno o ambulatorio que estime necesario el técnico a cargo de supervisión para lograr su rehabilitación.

2. Será evaluado por la Unidad de Asesoramiento de ASSMCA para recibir cualquier tipo de tratamiento tratamiento [sic] de naturaleza sicológica, sicómetrico o siquiátrico, de conformidad a la política pública que crea la gencia [sic] aludida.

3. Estará en restricción domiciliaria de 9:00 P.M. a 6:00 A.M." [Autos Originales, pág. 181].
Inconforme con este dictamen, Melvin presentó un escrito de apelación, ante nos, en 22 de julio de 1997, alegando la comisión de los siguientes errores:

*1036
"(A) Cometió error el Honorable Tribunal de Instancia al declarar culpable y convicto al acusado por el delito de infracción al Artículo 87 del Código Penal (Imprudencia Crasa o Temeraria al Conducir Vehículo de Motor) a pesar que el Ministerio Público no estableció los elementos del delito, ni probó la culpabilidad del acusado más allá de duda razonable.

(B) El análisis de la prueba efectuada por el Tribunal de Instancia no constituye el balance más racional, justiciero y jurídico de la misma."

II
Por estar estrechamente relacionados, ambos señalamientos de error los consideraremos conjuntamente.
La Constitución del Estado Libre Asociado, en su Carta de Derecho, Art. n, Sec. 11, establece que en todo procedimiento criminal, el acusado gozará de la presunción de inocencia. Esto significa que para declarar a una persona culpable de la comisión de un delito es necesario que la prueba establezca "más allá de duda razonable todos los elementos del delito y la conexión del acusado con los mismos". Pueblo v. Ramos Alvarez, 122 D.P.R. 287, 315-316 (1988); Pueblo v. Rodríguez Maysonet, 119 D.P.R. 302, 309 (1987); Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 761 (1985). Si existe una duda razonable acerca de la culpabilidad del acusado debe absolverse a éste. Regla 110 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110.
Esto no significa "que la culpabilidad del acusado tenga que establecerse con certeza matemática", sino que la prueba produzca en el juzgador de los hechos "aquella certeza moral que convence, dirige la inteligencia y satisface la razón". Pueblo v. Rosario Reyes, _ D.P.R _ (1995), 95 J.T.S. 74, a la pág. 942; Pueblo v. Rivera Rodríguez, _ D.P.R. _ (1992), 92 J.T.S. 88, a la pág. 9664; Pueblo v. Bigio Pastrana, supra.
En el caso de autos, el Tribunal de Primera Instancia encontró culpable a Melvin de infringir el Artículo 87 del Código Penal de Puerto Rico, 33 L.P.R.A see. 4006 (Supl.), luego de analizar la prueba presentada en el juicio. Sin embargo, Melvin señala que el Ministerio Público no estableció todos los elementos de dicho delito, ni probó la culpabilidad del acusado más allá de duda razonable. El Artículo 87 de Imprudencia Crasa o Temeraria al Conducir Vehículo de Motor dispone que:

"Cuando en la muerte ocasionada por una persona al conducir un vehículo de motor mediare imprudencia crasa o temeraria, se impondrá pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años.

La imprudencia crasa o temeraria es aquella de tal naturaleza que demuestre un absoluto menosprecio de la seguridad de los demás bajo circunstancias que probablemente produzcan daños a éstos y no significa una mera falta de cuidado."

El delito configurado en el Artículo 87 es una versión agravada del delito de homicidio involuntario recogido en el Artículo 86 del Código Penal, 33 L.P.R.A. sec. 4005. Dora Nevares-Muñiz, Código Penal de Puerto Rico Revisado y Comentado, Puerto Rico, 5 Ed., 1995, pág. 132. Ambos delitos "comparten un elemento común de negligencia criminal y los diferencia el grado o intensidad de esa negligencia ...". Pueblo v. Hernández Olmo, 105 D.P.R. 237, 243. Los requisitos de la negligencia criminal o culpa son los siguientes:

"1. Una acción u omisión voluntaria pero no intencional.

2. Ejecutada sin tomar las precauciones necesarias para evitar resultados perjudiciales, o al violar una ley o reglamento; y

3. Que el resultado dañoso sea previsible por el actor aunque no querido." Nevarez-Muñiz, pág. 130, supra.
*1037 Las declaraciones de los testigos demostraron que Melvin conducía el camión tumba con imprudencia crasa o temeraria dadas las circunstancias del tiempo y el tránsito esa tarde del 13 de junio de 1996. Se demostró en el juicio que el accidente no se debió a problemas mecánicos en el camión. El Sr. Juan Horta Ruiz, mecánico en el Departamento de Transporte, declaró que los frenos, las luces y el tren delantero estaban en buenas condiciones. (Exposición Narrativa de la Prueba, pág. 26]. Por el contrario, en el juicio se demostró que el accidente se debió a que Melvin no actuó con la prudencia de un hombre prudente y razonable, sin tomar las debidas precauciones para evitar resultados pequdiciales. Veamos:
El tramo de la carretera donde ocurrió el incidente es un área sumamente peligrosa, donde han ocurrido muchos accidentes. Por lo inseguro del lugar, el Departamento de Transportación y Obras Pública, luego de realizar un estudio en el área, instaló un biombo para prevenir la producción de nuevos accidentes. [Exposición Narrativa de la Prueba, pág. 15]. Además, la carretera estaba mojada porque en la tarde del 13 de junio llovió torrencialmente. [Exposición Narrativa de la Prueba, pág. 6]. También, luego de ocurrir el primer accidente, todos los testigos concurren, en que el lugar se fue llenando de gente y el tránsito se fue tomando más lento y pesado.
El Sr. Rubén Cruz Pacheco, un gmero que se presentó en el lugar cuando ocurrió el primer accidente, declaró:
"... que ya había llovido; que estaba bastante claro; que cuando él llegó al sitio todavía estaba el tránsito normal; que cuando llegó el policía investigador entonces la gente pega a reducir y a mirar y poco a poco fueron congestionando la vía de tránsito; que en una de esas viene el camión descontrolado; que el estaba en el paseo al lado de la patrulla; que ve el truck que viene como tratando de reducir, pero que empieza a bandearse de lado a lado frenando...". [Exposición Narrativa de la Prueba, pág. 29]
A su vez, el Sr. Luis A. Montalvo Suárez declaró:
"... que él ve que los carriles se están congestionando porque los noveleros empiezan a ver la ambulancia que había llegado, la patrulla y de repente vio al camión que empezó a bajar la cuestita que allí; que se refiere a la cuesta que hay después que se pasa el puente, en el kilómetro 178 que hay; que el camión se tira al carril izquierdo, luego al derecho, luego al izquierdo de nuevo y para el derecho; que observó que venía patinando; que no había control en él, no sabe porqué razón; que él observa eso como a unos dos hectómetros más o menos;.. [Exposición Narrativa de la Prueba, pág. 36],
El Agente Garayúa testificó lo siguiente:
Se le pregunta a que manera venía el camión y contesta: "Al yo mirar hacia arriba que veo el camión venir, me percato que lo hacía a una velocidad que por las condiciones de la carretera, que está mojada, para mi entender no podía detenerse"', que dice eso por la condición de la carretera que estaba mojada; que es un vehículo pesado de motor y el tráfico estaba lento, por esas condiciones él pensó que no se podía detener; que él dice que el tráfico estaba lento ya que transcurrían vehículos en ambos carriles a una velocidad moderada... [Exposición Narrativa de la Prueba, pág. 6].
De la declaración de estos testigos se puede inferir claramente que Melvin conducía a exceso de velocidad a pesar de las circunstancias presentes ese día. El exceso de velocidad, los carriles congestionados, más la carretera mojada causó que Melvin no pudiera frenar a tiempo y perdiera el control del camión. [Exposición Narrativa de la Prueba, pág. 55]. Melvin declaró que:
"... subida la loma ya encontró que los carriles estaban obstruidos, cuando fue a contrarrestar el truck el vehículo siguió su paso; que sigue frenando; que el truck le responde, pero no como debe responder; que decide sacarlo hacia el paseo cuando se percata que también estaban obstruidos los carriles y decide sacarlo hacia el pasto, cuando se encuentra con la valla, pero cuando le dio a la valla el camión perdió su control..." [Exposición Narrativa de la Prueba, pág. 52].
El resultado de todo esto fue una cerca de seguridad y un automóvil destruido y, lamentablemente, *1038 la muerte de un ser humano. El Tribunal Supremo ha señalado "que la imprudencia es aquella que trasciende la mera falta de cuidado y que se traduce en grave menosprecio por la seguridad de los demás. No cabe duda de que la evidencia de velocidad excesiva es indicio de imprudencia crasa. El exceso de velocidad es un agente causante de accidentes y dentro de la naturaleza del riesgo creado, está el impactar a otro vehículo". Pueblo v. Andaluz Méndez, _ D.P.R. _ (1997), 97 J.T.S. 107, a la pág. 1295.
Es norma reiterada que los jueces de instancia y los jurados son quienes están en mejor posición de apreciar la evidencia que se presenta en un caso, por lo cual "su apreciación merece gran respeto y deferencia". Es por ello que en ausencia de error manifiesto, prejuicio, parcialidad, o pasión, no se intervendrá en la apreciación de la prueba que haga el juzgador de instancia. Pueblo v. Maisonave, _ D.P.R. _ (1997), 97 J.T.S. 67, a la pág. 8838; Pueblo v. Rosario Reyes, supra, pág. 943; Pueblo v. Rodríguez, Román, 128 D.P.R. 121, 131 (1991); Pueblo v. Torres Rodríguez, 119 D.P.R. 730, 739 (1987); Pueblo v. De Jesús Rivera, 113 D.P.R. 817, 826 (1983). El razonamiento de dicha norma es que el juzgador primario, es quien oye y ve declarar a los testigos, por lo que está en mejor posición de determinar si un testigo miente o no. Pueblo v. Maisonave, supra; Pueblo v. Cabán Torres, 117 D.P.R. 645, 654 (1986).
En virtud de lo anteriormente expuesto, se confirma la sentencia apelada.
Notifíquese.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General