Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 30 de julio de 2001, al apelante Domingo Mercado Mercado se le impuso por sentencia una pena de separación permanente de la sociedad mediante reclusión perpetua, por ser declarado un delincuente habitual. Se le impuso esta penalidad por haber cometido el apelante los siguientes delitos graves: Artículo 6 de la Ley de Armas, Artículo 8 de la Ley de Armas, Artículo 8 (A) de la Ley de Armas, dos casos, Robo (25 L.P.R.A. 416, 418, y 418(a) y Código Penal, Art. 173, 33 L.P.R.A. 4279).
Habiéndose completado el proceso apelativo, incluyendo una Exposición Narrativa de la Prueba Estipulada presentada ante este tribunal el 15 de octubre de 2001 y habiéndose recibido los alegatos de las partes, estamos en condiciones de emitir nuestro dictamen. Confirmamos la Sentencia apelada. Veamos.
I
Repasemos primero los hechos esenciales y pertinentes para posteriormente discutir los errores alegados por el apelante.
Según el testimonio de Noel Casas Ramírez, testigo del Ministerio Público, el día 15 de marzo de 2000, a las 11:00 de la mañana, fue a la Ferretería San Antonio Aluminium en el Gate 5 junto con el apelante y otros dos y asaltaron el negocio y a su dueño. Que él formó parte del asalto porque dos días antes el apelante lo invitó y el día antes habían ido a la ferretería para familiarizarse con el lugar. El asalto lo planificó el apelante. Al ellos llegar en un auto azul al lugar vestidos de policía, le preguntan al empleado (Wilfredo Agront Torres), dónde estaba el dueño (Miguel Acevedo conocido como Bobby Cham) y el empleado lo busca. El apelante Domingo Mercado, armado con un arma de nueve milímetros aniquelada, se lleva al dueño a la parte de atrás del negocio y él, el testigo (Noel Casas), se quedó con el empleado. Poco después, otro de los asaltantes (Rey), se quedó vigilando al empleado que estaba dentro del baño y el apelante con otro asaltante (Frank), quien tenía una escopeta larga, metieron el dinero en un bulto ($50,000). Luego del robo se fueron de la Base Ramey hacia el Nuevo San Antonio y durante el transcurso, el apelante ordenó al vehículo detenerse. Detenido el vehículo, le *968 da a Noel Casas con una escopeta y le dice “viste cómo son las situaciones de presos”. (Al oír esta declaración, la representación legal del apelante objeta y se excusa al jurado porque el testigo iba a hablar de que el apelante y Casas estuvieron presos a la vez y que ese testimonio era inadmisible porque el apelante había aceptado la reincidencia y que la evidencia no era pertinente al caso.) El tribunal permitió el testimonio, y con el jurado en sala declaró Casas que estuvieron en Guerrero (cárcel) juntos y que lo conocía de preso, y al apelante le dieron una carga y que éste decía que había sido él quien ordenó la carga. Lo dejaron en la calle.
Declaró que las armas las alquilaron, pero la nueve milímetros era del apelante. Declaró que estaba preso cuando informó el robo y que a cambió de su testimonio le iban archivar unos casos para poder beneficiarse del grillete. Que el no es amigo del apelante y que el apelante trabajaba en el Shopping de Aguadilla y que lo recogieron a las 11:00 de la mañana en el Gate 5 de la Base Ramey. La primera vez que reportó el robo fue el 7 de julio de 2000.
Pasemos a examinar lo declarado por los tres restantes testigos del Pueblo que sea pertinente o material, tomando en cuenta los errores señalados.
Wilfredo Agront Torres, empleado de la ferretería asaltada, describe un cuadro muy similar a lo declarado por el testigo Casas. Añade que el asalto o robó duró de quince a veinte minutos y que los asaltantes llegaron de 10:30 a 11:00 de la mañana. Identificó a Noel Casas como el que encerró a Bobby Cham en el baño. Testificó que vio a Casas y al apelante Domingo Mercado tirar un bulto y sacaron dos armas. Casas tenía una escopeta y Mercado una pistola. Declaró que luego de presentada la querella, unos días después del robo, fue al cuartel y le mostraron un libro de fotos, pero no pudo identificar a nadie. Cinco meses después, luego que Casas hiciera su declaración, le presentaron un libro de fotos que incluía la foto de Domingo Mercado y es entonces que identifica al apelante y a Noel Casas. Declaró que identificó al apelante cuando el agente le mostró una foto y le preguntó: “mira ver si este es el que te asaltó”. El próximo testigo del Pueblo fue el dueño de la ferretería, Miguel Acevedo (conocido por Bobby Cham) y éste testificó que como a las 10:30 a 11:00 de la mañana entró el apelante vestido de policía y con identificación. Su empleado lo llevó detrás del negocio donde le informó que lo estaban asaltando y lo llevó al baño y lo metió allí con su empleado Agront y le preguntó por su cartera. Después lo saca del baño y le dice que abra la caja fuerte. Le apuntan con una escopeta y lo amenazan. El abre la caja, lo amarran y lo dejaron en el cuarto con la caja. Le robaron $50,000. Identificó al apelante en corte abierta como también a Casas. Declaró que el asalto duró de 20 a 25 minutos. En el contrainterrogatorio declaró que la primera vez que va a identificar a los asaltantes, es como en el mes de junio e identificó al apelante por unas fotos que le mostró la policía.
El último testigo del Pueblo fue el Agente Waldemar Valle y en lo pertinente declaró que una señora llamada Mayra González informó que su novio Noel Casas, que estaba preso, quería dar información y en una entrevista le dijo que había participado en un robo en la ferretería de San Antonio con Mingo de Playuela y otros que también identifica por nombre. El agente declaró que Casas describió cómo fue el asalto identificando a Domingo como la cabecilla del grupo. Declaró que hizo un “line-up” con fotos, entre ellas la de Noel Casas para que fuera identificado por Don Miguel Acevedo y Wilfredo y- éstos lo identificaron. Sin embargo, no identificaron al apelante hasta que le presentó una rueda de nueve fotos después de la declaración de Casas que es cuando los dos testigos identifican al apelante por primera vez.
Luego pudo ocupar el vehículo en el que alegadamente se cometieron los delitos y lo llevó a la estación de San Antonio donde más adelante lo identificó Noel Casas. Pudo constatar que el vehículo estaba en posesión de una tal Yanira o Yadira, y que el tenía información de que ella era pariente del apelante.
En el contrainterrogatorio testificó, según antes señalado, que inicialmente los testigos Acevedo y Agront no identificaron al apelante, pero lo identificaron luego de la declaración de Casas y al presentarle unas fotos entre la que estaba la de Domingo. Expresa que el asalto ocurre en el Gate 5 y los hechos ocurrieron a las 11:00 de la mañana.
*969 De esa forma termina la presentación de la prueba del Pueblo. La defensa presentó prueba oral para establecer su defensa de coartada, la que pasamos a resumir.
Declaró el testigo Pérez Genera que cuando ocurre el asalto, el apelante trabajaba como cocinero en Sandwicher Lovers, en Aguadilla Mall, y ese día trabajó de nueve de la mañana a dos de la tarde y que Domingo estaba trabajando. El testigo Pérez Gerena indicó que el horario del apelante era de 7:00 de la mañana a 3:00 de la tarde.
En el contrainterrogatorio declaró que el apelante era cocinero, ponchaba, pero la máquina de ponchar no identificaba quién poncha la tarjeta. Se le mostró la tarjeta del apelante para el 15 de marzo y se estableció que el apelante ese día estuvo en “break” de 11:02 hasta que entró a las 11:32 de la mañana. Pérez Gerena testificó que según su mejor recuerdo, el apelante no salió del trabajo ese día.
La gerente de Sandwicher Lovers, Sandra Román Cruz, confirma el horario seguido por el apelante en su trabajo el día del asalto e indica que no sabe si el apelante estaba en el trabajo de 11:02 a 11:32 de la mañana.
El empleado de Sandwicher Lovers, Miguel Ruiz Misla, declaró que trabajó todo el día con Domingo (el apelante) y que Domingo se queda en el trabajo en la hora del “break”.
Amarilys Morales Soto declaró ser empleada de Sandwicher Lovers y ese día 15 de marzo entró a las 7:00 de la mañana con Domingo, y que Domingo cogió el “break” de 11:02 a 11:32 de la mañana ese día, y que él era el único cocinero ese día. No puede asegurar qué hizo Domingo en su “break”. Declaró que media hora no da tiempo para salir del Mall y volver.
II
Ante estos hechos que hemos resumido, el apelante señala los siguientes errores: que erró el Tribunal de Primera Instancia al permitir al Ministerio Público interrogar al testigo coautor, con inmunidad tal sobre las convicciones anteriores del apelante en forma lesiva, a pesar de las objeciones de la defensa y al no instruir al jurado sobre el propósito con el cual admitió esa línea de preguntas y sobre el peso que esa información debía tomar al momento de deliberar; erró al aceptar y admitir evidencia testifical, a pesar de la oportuna y correcta objeción del apelante; erró al aceptar el veredicto de culpabilidad cuando el jurado se equivocó en la aplicación de la ley, ya que no se probó el caso más allá de la duda razonable, y erró al aceptar un veredicto defectuoso y al no instruir al jurado para que reconsiderara dicho veredicto.
III
Así como las partes han hecho, discutiremos los dos primeros errores señalados por el apelante conjuntamente y luego discutiremos los restantes dos errores de igual forma.
La Regla 68 de las Reglas de Procedimiento Criminal, en lo pertinente, establece que cuando la acusación imputare un delito en grado de reincidencia o subsiguiente o delincuencia habitual, el acusado podrá, al momento de hacer alegación, o en cualquier ocasión posterior, siempre que fuere antes de leerse la acusación al jurado, admitir la convicción o convicciones anteriores y, en tal caso, no se hará saber al jurado en forma alguna la existencia de dicha convicción o convicciones. 34 L.P.R.A. Ap II, R. 68, segundo párrafo.
El apelante aceptó la alegación de reincidencia en el acto de Lectura de Acusación.
Imputa el apelante que el tribunal erró al permitir el comentario que hiciera el testigo Noel Casas Ramírez que claramente establecía que el apelante había estado en la cárcel y que ahí se conocieron. Es decir, que hablar sobre el hecho de que el apelante había estado anteriormente en la cárcel, le causaría un perjuicio irreparable. (Véase, Exp. Narrativa, testimonio de Noel Casas ante el jurado, pág. 1) El Fiscal asumió la posición de que la razón que traía este testimonio era para establecer dónde se conocieron el testigo con inmunidad y el apelante, *970 por lo que el tribunal no erró al permitir el testimonio de Noel Casas objetado por el apelante.
Resolvemos que erró el Tribunal de Primera Instancia al determinar como evidencia pertinente y admisible las declaraciones del testigo Casas que conoció al apelante en la cárcel y el encuentro con él, el acusado, se debió a un incidente mientras ambos estaban presos en la misma cárcel. Aun si fuera evidencia pertinente, no sería admisible bajo la Regla 19 (a) de las Reglas de Evidencia, 32 L.P.R.A, Ap. IV. Y debió haber sido excluida por el peligro de causar perjuicio indebido. La Regla citada establece que evidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación a cualquiera de los siguientes factores: (a) peligro de causar perjuicio indebido, (b) probabilidad de confusión, (c) desorientación del jurado, (d) dilación de los procedimientos, (e) innecesaria presentación de prueba acumulativa. Regla de Evidencia 19, supra.
No obstante, no todo error que afecten derechos, aun constitucionales, incluyendo los de la parte afectada, acarrea revocación. Pueblo v. Pellot Pérez, 121 D.P.R. 791, 803 (1988).
La Regla 4 de las Reglas de Evidencia, supra, expresa que no se dejará sin efecto una determinación de admisión de evidencia, ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia, a menos que ocurran dos eventos: que la evidencia fue admitida, a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión, y que el tribunal que considera el efecto de la admisión errónea entiende que ésta fue el factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita.
Esta disposición (Regla 4 de las de Evidencia, supra) es conocida como la “doctrina de error perjudicial”. “Esto quiere decir que si probablemente el resultado hubiere sido distinto de no haberse emitido o excluido la evidencia y habiendo mediado oportuna y correcta objeción, el tribunal apelativo probablemente revoque.” E. L. Chiesa, Práctica Procesal Puertorriqueña, Evidencia, San Juan, Publicaciones. J.T.S., 1983, Vol. I, Cap. 1, pág. 8.
Nuestro Tribunal Supremo ha expresado que el criterio que debe utilizarse es uno sencillo; este es, si la evidencia erróneamente admitida puede haber tenido una influencia notable, determinante y hasta desmedida, en la mente del juzgador de los hechos en relación con el veredicto, fallo o sentencia que el mismo emitiera en el caso, sea éste civil o criminal. Kotteakos v. United States, 328 U.S. 750 (1946); Pueblo v. Rosaly Soto, 128 D.P.R. 729, 744 y 745 (1991).
Un acusado no tiene derecho a un juicio perfecto, sino sólo a un juicio justo que satisfaga las exigencias del debido proceso de ley. Pueblo v. Echevarria Rodríguez, 128 D.P.R. 299, 381 (1991).
Apliquemos estas doctrinas a nuestro caso.
Una sencilla lectura de la exposición narrativa de la prueba estipulada, nos muestra que todos los elementos de los delitos imputados fueron probados más allá de la duda razonable. Los testimonios de los tres testigos oculares fueron consistentes y claros. La identificación fue positiva, el apelante fue identificado por fotos y en corte abierta. La declaración del coautor de delito que se objeta, en nada afectó los hechos que establecen el delito o los delitos imputados. Recordemos que los asaltantes no usaron máscara y el apelante estuvo en presencia de los testigos por 20 minutos durante el asalto.
Según el expediente del caso, no surge que el apelante haya pedido instrucción especial alguna. La instrucción solicitada a través del error señalado ante este tribunal, no fue levantada oportunamente, es decir, durante el juicio y antes de que el jurado se retirase a deliberar. En la exposición narrativa de la prueba no surge ninguna solicitud o negativa para atender la instrucción que alega el apelante no se le dio al jurado por el juzgador.
*971 En materia de instrucciones, nuestro Tribunal Supremo ha expresado dos normas referentes a la función apelativa. Primero, no se atenderán planteamientos por comisión u omisión no presentados en el tribunal sentenciador antes de que el Jurado se retirase a deliberar, y de manera de excepción, se examinarán solamente errores que involucren potencialmente una lesión a derechos fundamentales o si, por su importancia al sistema de procedimiento criminal en los foros de instancia, amerita una interpretación del tribunal. Pueblo v. Frometa Hazaury, 140 D.P.R. 18, 21 ( 1996).
Los primeros dos errores no se cometieron.
El tercer y cuarto error tampoco se cometieron.
Por el tercer error, se alega que no se probó el caso más allá de la duda razonable.
Sabido es que en nuestro ordenamiento constitucional se presume inocente a todo acusado de delito mientras no se pruebe su culpabilidad más allá de toda duda razonable. Art. II, Sec. 2, Const. E.L.A., L.P.R.A. Tomo I. Le corresponde al Ministerio Público probar la culpabilidad del acusado mediante evidencia que establezca todos los elementos de delito más allá de duda razonable. Pueblo v. González Román, 138 D.P.R. 691, 707 (1995).
Ya habíamos intimado que según la exposición narrativa de la prueba estipulada, surge que la prueba presentada por el Ministerio Público fue contundente, clara y suficiente en derecho. Además de ser suficiente, la prueba fue satisfactoria. La prueba presentada según nuestro expediente, los autos originales y la exposición narrativa, nos producen certeza moral en nuestra conciencia, exenta de preocupación, por lo que aceptamos el veredicto emitido. Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454, 472 (1988).
El apelante, en su escrito, cuestiona el modo usado y el tiempo que transcurrió para identificar al apelante. Señala que días después del asalto, los testigos no pudieron identificar al apelante después de haber examinado unas fotos que le mostró el agente. Lo identificaron meses después y luego de que el coautor del delito hiciera su declaración incriminando al apelante. No le asiste la razón. El apelante fue correctamente identificado mediante una rueda de fotos que le presentara el agente, fue identificado por el referido coautor del delito y fue identificado en corte abierta por el dueño del negocio asaltado. Pueblo v. Rodríguez Maysonet 119 D.P.R. 302 (1987).
Resumiendo, la prueba mostró que el apelante junto a otros fueron al lugar un día antes para comprar unos clavos. El próximo día llegan a la ferretería en auto que luego fue identificado, entran al lugar y con detalles se describe los pasos seguidos por los asaltantes y especialmente el apelante, quien era la cabeza. Se probó que el apelante estaba armado e hizo amenazas y se llevó, sacándolo de la caja perteneciente al dueño de la ferretería, la suma de $50,000.
Es cierto, obviamente, que las determinaciones de los hechos de los juzgadores no son infalibles, pero igual de cierto es que estos juzgadores se merecen respeto y confiabilidad. Hasta tanto se disponga de un método infalible para averiguar sin lugar a dudas dónde está la verdad, su determinación tendrá que ser una cuestión de conciencia. Ese deber de conciencia no para en el fallo del tribunal sentenciador, nosotros también tenemos derecho a tenerla tranquila. Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R. 545, 551-552 (1974).
Después de cuidadosamente examinar la prueba que llevó al jurado a su determinación y veredicto, estamos convencidos que la determinación y veredicto de dicho jurado fue y es el correcto. Los errores tercero y cuarto, igual que el primero y segundo, tampoco se cometieron. Se confirma la sentencia apelada.
Notifíquese.
*972 Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General